FILED

2008 JAN 23  AM 11: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CALIF.
LOS ANGELES

BY

1  COUGHLIN STOIA GELLER
     RUDMAN & ROBBINS LLP
2  JOHN J. STOIA, JR. (141757)
   jstoia@csgrr.com
3  TIMOTHY G. BLOOD (149343)
   tblood@csgrr.com
4  LESLIE E. HURST (178432)
   leslieh@csgrr.com
5  THOMAS J. O'REARDON II (247952)
   to'reardon@csgrr.com
6  655 West Broadway, Suite 1900
   San Diego, CA  92101
7  Telephone: 619/231-1058
   619/231-7423 (fax)
8
   MAGER & GOLDSTEIN LLP
9  JAYNE A. GOLDSTEIN
   jgoldstein@magergoldstein.com
10 1640 Town Center Circle, Suite 216
   Weston, FL  33326
11 Telephone: 954/515-0123
   954/515-0124 (fax)
12
13 Attorneys for Plaintiff

14 [Additional counsel appear on signature page.]

15                UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                     WESTERN DIVISION

18 PATRICIA WIENER, On Behalf of       )  **VIA FAX**
   Herself and All Others Similarly    )
19 Situated and the General Public,    )  No.    **CV08-00415  SJO**
                                        )                    **(AGRx)**
20              Plaintiff,              )  CLASS ACTION
                                        )
21     vs.                              )  CLASS ACTION COMPLAINT FOR:
                                        )
22 THE DANNON COMPANY, INC.,            )  1.  VIOLATIONS OF CONSUMERS
                                        )      LEGAL REMEDIES ACT,
23              Defendant.              )      Civil Code §1750 *et seq.*;
                                        )
24                                      )  2.  VIOLATION OF THE UNFAIR
                                        )      COMPETITION LAW, Business
25                                      )      and Professions Code §17200 *et*
                                        )      *seq.*; and
26                                         3.  BREACH OF EXPRESS
                                               WARRANTY
27
                                           DEMAND FOR JURY TRIAL
28

Plaintiff Patricia Wiener, by and through her attorneys, brings this action on behalf of herself and all others similarly situated and the general public against defendant The Dannon Company, Inc. ("Dannon").  The Court has jurisdiction of this action pursuant to 28 U.S.C. §1332(d)(2).  Plaintiff alleges, on information and belief, except for information based on personal knowledge, as follows:

## JURISDICTION AND VENUE

1.   This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which members of the Class of plaintiffs are citizens of states different from Dannon.  Further, greater than two-thirds of the Class members reside in states other than the state in which Dannon is a citizen.

2.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because defendant:

(a)   is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

(b)   does substantial business in this district; and

(c)   is subject to personal jurisdiction in this district.

## NATURE OF THE ACTION

3.   Dannon manufactures, markets and sells yogurt products known as Activia, Activia Lite and DanActive (collectively, the "Products").  Through an extensive and comprehensive nationwide marketing campaign, Dannon claims that the Products are "clinically" and "scientifically" "proven" to provide consumers with health benefits that other yogurt products cannot.  Dannon claims in its advertising that these exclusive health benefits result from its proprietary strains of "probiotic" bacteria that are unique to the Products.  Dannon's representations are false, misleading and reasonably likely to deceive the public.

4.     Dannon's own studies fail to support this advertising message, and a number of them flatly contradict Dannon's claims.  It is not proven that Dannon's proprietary strains of probiotic bacteria deliver the unique health benefits claimed in its advertising campaign.  Nonetheless, as a result of Dannon's deceptive advertising campaign, Dannon is able to charge a premium for the Products.

5.     Dannon's misleading marketing campaign begins with deceptive names for its proprietary strains of bacteria.  These names sound scientific, and imply that the Products deliver the specific claimed health benefits.  Dannon's exhaustive advertising campaign builds on this deception.

6.     In February 2006, Dannon began marketing Activia.  On its label and in its other advertisements, Dannon stated and continues to state that Activia contains the probiotic bacteria "*Bifidus* Regularis."  It advertised and continues to advertise that because of this proprietary "probiotic" bacteria, Activia is "proven" to improve one's "intestinal rhythm" and "regulate your digestive system."

7.     Less than a year following the release of Activia, in January 2007, Dannon launched DanActive.  On its label and in its other advertisements, it stated and continues to state that DanActive contains the probiotic bacteria "L. casai Immunitas."  It advertised and continues to advertise that because of this "probiotic bacteria," DanActive "has been clinically proven to help naturally strengthen the body's defenses" and to improve the body's "immune system."  On each package label and container, Dannon prominently prints "IMMUNITY."

8.     Dannon's nationwide advertising campaign has been massive and comprehensive, spending far more than $100 million to convey these deceptive messages to consumers throughout the United States.  Described as a "360-degree marketing plan," Dannon conveyed and continues to convey its deceptive claims about the Products through a variety of media, including television, newspapers, magazines, direct mail, the Internet, in-store sampling, point of sale displays, and on

the Products' labels and labeling.  On the Internet, Dannon's Activia is the number one paid listing in the results for "yogurt" on Google.

9.    Through this massive campaign, Dannon has conveyed one message: Dannon's proprietary bacteria strains provide the Products with clinically and scientifically proven health benefits that other yogurt products do not.  Each person who has purchased the Products has been exposed to Dannon's misleading advertising message multiple times.

10.   Dannon's advertising and marketing campaign is designed to cause consumers to buy the Products as a result of this deceptive message, and Dannon has succeeded.  As a result of this campaign, Dannon's "probiotic" launch has been one of the most successful product launches in recent food-industry history.  For example, in the first year, Activia reached sales numbers that less than one-tenth of one percent of all new foods and beverages achieve in their first year in the marketplace.

11.   As a result of the misleading message conveyed through this campaign, Dannon has been able to, in its words, "justify" a 30% price premium for the Products over other yogurt products.

12.   Plaintiff brings this action on behalf of herself and other similarly situated consumers in the United States to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products.  Plaintiff alleges violations of the Consumers Legal Remedies Act, the Unfair Competition Law and breach of the express warranty created by its advertising, including its labeling.

**PARTIES**

13.   At all times relevant to this matter, plaintiff Patricia Wiener resided and continues to reside in this district.  During the Class period, plaintiff was exposed to and saw Dannon's claims, purchased some of the Products in reliance on these claims,

- 3 -

1   and suffered injury in fact and lost money as a result of the unfair competition
2   described herein.

3       14.    Defendant Dannon is incorporated in the state of Delaware and is
4   headquartered in White Plains, New York.  Dannon is registered to do business in the
5   State of California, and does business in the State of California.  Dannon promotes,
6   markets, distributes and sells the Products throughout the United States, including to
7   tens of thousands of consumers in California.  Dannon is a wholly owned subsidiary
8   of the French company, Danone Group S.A. ("Danone Group").

9                             **FACTUAL ALLEGATIONS**

10      15.    On October 19, 2005, Dannon announced the February 2006 release of
11  Activia, "trailblazing a new way to help Americans improve their intestinal rhythm."
12  Dannon was "thrilled to introduce the first-of-its-kind probiotic yogurt in the U.S.
13  clinically proven to help regulate your digestive system."  Since that time, Dannon has
14  consistently conveyed the message to consumers throughout the United States that its
15  proprietary probiotic bacteria is "clinically" and "scientifically" "proven" to deliver
16  health benefits, claims which are not substantiated, let alone established as fact.  In
17  January 2007, Dannon used the same marketing message when it launched
18  DanActive, claiming that its proprietary probiotic bacteria is proven to "strengthen"
19  one's "defenses" and improve one's "immune system."

20      16.    While scientists have not agreed on a common definition, the Food and
21  Agricultural Division of the United Nations and the World Health Organization define
22  probiotics as "live microorganisms which when administered in adequate amounts,
23  confer a health benefit on the host."  There is no scientific consensus about whether
24  healthy people benefit from probiotic bacterial supplements, such as those at issue.  If
25  probiotic bacteria do have any health benefits, they must survive the digestive tract in
26  sufficient quantities to achieve the possible benefit.  However, there is no consensus
27  on the quantities of probiotics people might require to achieve a probiotic effect, if
28  probiotics have any such effect in healthy people.

17.     Using the term as a marketing tool, without regard to whether it actually delivers any probiotic benefits, Dannon defines probiotics as bacteria that "must bring health benefits to their host."

### DANNON'S CLAIMS ABOUT ACTIVIA

18.     Dannon's marketing claims "Activia® lowfat yogurt, and Activia Light® nonfat yogurt are made with *Bifidus* Regularis™, a natural probiotic culture that can help regulate your digestive system by helping with slow intestinal transit.  Activia® and Activia Light® are the only yogurt Products that contain this specific probiotic strain."

19.     *Bifidus* Regularis is Dannon's trademarked probiotic *Bifidodbacterium animalis* strain DN-173-010.  Dannon's marketing department chose the "Regularis" name to deceptively imply scientific significance and credibility to Dannon's inadequately tested and trademarked probiotic strain.

20.     The consumer, unaware that Regularis is nothing more than Dannon's cleverly developed marketing name, is led to believe that Dannon's strain promotes regularity.  The "is" suffix is nothing more than Dannon's deceptive attempt to suggest scientific derivation.

21.     Despite inadequate testing and admissions by its parent company, Danone Group, that Activia provides no proven additional health benefits to the average healthy individual, Dannon states that Activia is for everyone ("Activia® is for anyone who wants to help naturally regulate their digestive system").

22.    The label on each container of Activia substantially appears as follows:



23.    The label on each carton of Activia substantially appears as follows:



24.    On every Activia label, Dannon also prominently claims: "**CLINICALLY PROVEN** to help in two weeks, when eaten daily" and "contains natural probiotic culture – **Bifidus Regularis**™ – only in Activia®." The labeling promotes Activia as "[t]he delicious way to help naturally regulate your digestive system" and claims that "Activia® is scientifically proven to help reduce long

1    intestinal transit time," which benefits the digestive system.  The labeling also

2    contains the following claims:

**Frequently Asked Questions**

**Q. What is Activia™?**

5        A.    Dannon® Activia™ is a delicious lowfat yogurt with the

6    natural probiotic culture Bifidus Regularis™.  Activia™ is clinically

7    proven to help regulate your digestive system when eaten daily for two

8    weeks by helping to reduce long intestinal transit time.

**Q. What are probiotics?**

10       A.    The word probiotic literally means "for life."  Essentially, a

11   probiotic is a culture that, if eaten in sufficient quantities, provides a

12   positive benefit for the host that goes beyond primary nutritional effects.

**Q. What is Bifidus Regularis™?**

14       A.    Bifidus Regularis is a probiotic culture scientifically proven

15   to survive passage through the digestive system, arriving into the large

16   intestine as a live culture that stays active.

**Q. How long until I will feel a difference from Activia™?**

18       A.    Activia is clinically proven to naturally regulate your

19   digestive system in two weeks when eaten daily.

20   Dannon did not and does not have substantiation for these statements, which are false

21   and misleading and reasonably likely to deceive the average consumer.

22       25.    Dannon deceptively describes Bifidus Regularis on its activia.com

23   webpage.  This website is accessible to the general public and Dannon's

24   advertisements in other media promote this website.  Without sufficient testing or

25   adequate substantiation, Dannon makes the following claims:

**What It Does**

27       Specialists at Dannon® selected Bifidus Regularis™ for Activia®

28   because it survives passage through the digestive tract, arriving in the

colon as a living culture.  Once there, it plays a beneficial role in your intestinal ecosystem.

**Two Weeks Can Make a Difference** Eating, as part of a balanced diet and healthy lifestyle,  Activia every day for two weeks delivers enough Bifidus Regularis™ to help regulate your digestive system by helping with slow intestinal transit.  And continuing to eat Activia will maintain that benefit.  Try it.

26.    Dannon's Activia television commercials convey the same message conveyed by Dannon in other media.  A typical Activia television commercial claims: "Eating Activia® everyday is clinically proven to help regulate your digestive system in two weeks."

27.    Television commercials for Activia have aired regularly across the country since the launch of Activia.  The first television advertisements began in February 2006 on broadcast networks and on cable channels that skew more heavily towards female viewers, such as the Lifetime channel and Food Network.

28.    To reinforce the deceptive message, and in accordance with its pre-determined marketing plan, Dannon began in the fall of 2006 to tout a money-back guarantee offer which it named the "Activia Challenge."  This part of Dannon's marketing campaign was included in all of the forms of media Dannon has used.

| | |
|---|---|
| 1st Woman: | Sometimes I feel irregular and bloated. |
| 2nd Woman: | Does that ever happen to you? |
| 3rd Woman: | Not lately.  I took the Activia challenge. |
| 4th Woman: | Eat it every day for two weeks. |
| 5th Woman: | It works or it's free. |
| Announcer: | Seems everyone's talking about the Activia two week challenge.  Activia with the natural culture *Bifidus* Regularis is clinically proven to help naturally regulate your digestive system in two weeks. |

6th Woman:     Mmmmm, heard about the Activia challenge?

7th Woman:     I told you.  [Laughter]

Announcer:     Activia, it works or it's free.

29.     In addition to making untested and unsubstantiated claims, Dannon's nationwide advertising claim that "it works or its free" is likely to deceitfully induce a placebo effect on consumers, irrespective of any actual probiotic effect.

30.     Dannon's claims that "eating probiotic foods like Activia® . . . has been clinically proven to help regulate your digestive system" and that Activia is clinically proven to help "bloating, heaviness, and difficult and painful defecation," are also false and misleading.  Dannon does not have adequate substantiation for these claims as they relate to the general public.  Further, for some, Activia actually worsens conditions affiliated with the digestive system.  For example, after consumers with irritable bowel syndrome try yogurt products such as Activia, the products can make them feel worse.

## DANNON'S CLAIMS ABOUT DANACTIVE

31.     Less than one year following the release of Activia, in January 2007, Dannon launched DanActive, a "cultured probiotic dairy drink that has been clinically proven to help naturally strengthen the body's defenses when consumed daily." Dannon's chief marketing officer predicted "that DanActive will be the next blockbuster."   On the strength of Dannon's deceptive marketing campaign, this prediction became a reality.

32.     As with Activia, Dannon conveys that DanActive can provide clinically and scientifically proven health benefits that other similar products cannot because it contains proprietary probiotic bacteria.  Dannon's marketing for DanActive claims that the bacteria "*L. casei* Immunitas™," found only in DanActive, is "clinically proven to help strengthen your body's defenses" and "has a physiological effect on our body's regular natural defense functions."  Dannon unequivocally claims that "[i]t is due to DanActive™ and its *L. casei* Immunitas™ contribution to the intestine's 3

1  defense levels that our body is more efficient in responding against small daily

2  challenges."

3      33.    *L. casei* Immunitas is Dannon's trademarked probiotic *L. casei* strain

4  DN-114 001.  Just as with its use of "Regularis" in Activia, Dannon's marketing

5  department chose the "Immunitas" name to imply scientific certainty and give

6  credibility to Dannon's claims when in fact Dannon does not have adequate

7  substantiation for the claims.

8      34.    The average consumer, unaware that Immunitas is nothing more than

9  Dannon's cleverly developed marketing name, is led to believe that Dannon's strain

10  will improve one's immune system and protect against developing disease and illness.

11  The Latinate "Immunitas" is nothing more than Dannon's deceptive attempt to

12  suggest scientific derivation.

13      35.    Dannon claims that DanActive is for "everybody who wishes to

14  strengthen his body's defenses."  However, there is no adequate support for this claim.

15  In fact, one of Dannon's own studies concluded that DanActive did not perform better

16  than traditional yogurt.

17      36.    On DanActive labels and labeling, Dannon also prominently states:

18      "Clinically Proven To Help Strengthen Your Body's Defenses."

19

20

21

22

23

24

25

26

27

28

37.    Dannon further conveys and reinforces this claim by prominently printing on every label of DanActive the word "IMMUNITY":



38.    DanActive labels and labeling also claim:

About 70% of your immune system is in your digestive tract.  This is where DanActive goes to work with the exclusive *L. casei* Immunitas™ cultures.

The labeling for DanActive further states:

**DanActive™ is Clinically Proven to Help**

**Strengthen Your Body's Defenses.**

**What is DanActive™?**

DanActive™ is a delicious, probiotic dairy drink that is clinically proven to help strengthen your body's defense system.

**How does DanActive™ work?**

DanActive™ goes to work directly in your digestive tract, where about 70% of your immune system is located.

## What makes DanActive™ work?

A key ingredient in DanActive™ is its exclusive *L. casei* Immunitas™ culture. Each bottle of DanActive™ contains 10 billion *L. casei* Immunitas™ cultures. These cultures remain active in the digestive tract where they have a positive effect on your digestive tract's immune system. Evidence from many studies demonstrate that daily consumption of DanActive™ with *L. casei* Immunitas™ helps strengthen your body's defenses.

## What are probiotics?

The word probiotic literally means "for life." Essentially, a probiotic is a culture that, if eaten in sufficient quantities, gives health benefits beyond basic nutrition.

39.    Dannon claims that DanActive will improve everyone's immune system, including those of young children, older children, adults and seniors. For example, an advertisement on danactive.com represents that DanActive helps the daily lives of the whole family:

- Sam, 6 years old, reports "My mom says DanActive helps our bodies stay alert against challenges."



- Claire, 12 years old, has a stressful and hectic lifestyle because of homework and chores, but she stays healthy because "DanActive helps me strengthen my body's defenses."



- Rachel, 36 years old, has a mother's typical life of "kids, traffic, work, stress, groceries, home" where "[e]ven eating and sleeping seem to become secondary."   But, she stays fit and healthy because "DanActive helps me keep my balance and my defenses at their best."



- Grandparents Anne and Louis are at a "vulnerable" age and "take DanActive to help strengthen [their] body's natural defenses."



40.   The following typical Dannon television commercial conveys the same message regarding the health benefits of DanActive:

Father:     [Reading newspaper at breakfast and sitting with his family.]  It says hear that stress [pause] can weaken our immune system.

Daughter:   [Opening refrigerator and reading a DanActive box.]  And about 70% of our immune system is in our digestive tract. [Bottom of screen reads: 70%. About 70% of your immune system is in your digestive tract.].

Father:     Right, apparently a culture called *L. casei* Immunitas can help.  It's clinically proven to help strengthen your body's defense system.

Daughter:   [While mother is pictured drinking DanActive.]   Only DanActive has *L. casei* Immunitas.

Father:     [While son is pictured drinking DanActive.] We should try this DanActive.

Announcer: New DanActive.  Help strengthen your body's defenses.

41.   Dannon also conveys in its print and other advertising that DanActive is clinically and scientifically proven to benefit students under the stress of exams, build seniors' resistance to infections, and improve the body's "defense response" during periods of "intense exercise."  These statements are not adequately supported by the scientific evidence or otherwise substantiated.

42.   Dannon's statements about the ability of its proprietary strains of bacteria to survive the gastrointestinal system in sufficient numbers to have probiotic effects are also unsubstantiated, false and misleading.

43.   No bacteria of the type at issue has been found to survive the gastrointestinal tract without the loss of a high percentage of the bacteria.

- 13 -

44.     Nonetheless, Dannon claims that all of its purportedly probiotic bacteria survive.  For example, on every package of DanActive sold it states: "Each bottle of DanActive contains 10 billion *L. casei* Immunitas™ cultures.  These cultures remain active in the digestive tract where they have a positive effect on your digestive tract's immune system."  In one of its own studies, Dannon concedes that only 10%-51.2% of the cultures survived in the small intestine and just 28.4% in feces.  Further, the actual data in this study supports the conclusion that even less than these amounts survive the intestinal tract.  Activia's survival rate claims are similarly misleading.  Contrary to Dannon's claim that "many" of the "billions of natural *Bifidus Regularis*™ cultures" survive and remain active in the digestive tract, a *Consumer Reports* test (Dannon Activia August 2006) found that of the original three billion cultures of *Bifidus Regularis* in a 4-ounce serving of Activia only three million cultures survived to the colon.

## DANNON'S OWN SUBSTANTIATION DEMONSTRATES THE FALSITY OF ITS CLAIMS

45.     According to a June 2006 report on probiotics published by the American Academy of Microbiology – a project which received financial support from Dannon itself – "there is no conclusive evidence that altering the microbiota of a healthy human adult is beneficial." The report, entitled "Probiotic Microbes: The Scientific Basis," was prepared by the American Academy of Microbiology, a leadership group of the American Society of Microbiology, which is the leading professional association of microbiologists.

46.     Dannon deceptively conveys the marketing message that the Products have been clinically proven by "many studies" to deliver unique benefits, and by citing to 25 to 30 clinical studies, depending on when the claim was made.

47.     A typical example of Dannon's reference to studies occurred on August 30, 2007, when Dannon aired a DanActive television advertisement that ended by stating at the top of the screen "25 studies of DanActive and Lactobacillus

Immunitas" with "Clinically proven" at the lower right.  As with the rest of the subject marketing campaign, Dannon intended to convey the message that its claims have been clinically proven by 25 scientifically reliable studies performed on humans. Dannon claims that 30 publications substantiate its claims.  Of these 30, two were duplicate studies and one was a review, leaving 27 separate studies.  Less than half of these 27 studies were conducted on people and could rightfully be called clinical studies.  (According to the National Institutes of Health, a clinical study is "a type of research study that tests how well new medical approaches work in people.") Ten of the 27 studies were conducted in animals and six were *in vitro*, meaning in neither animal or human.  Only eleven studies involved people and only four of these looked at whether DanActive could prevent illness.  None of these four studies provided by Dannon show that DanActive prevents illness in healthy adults. *In vitro* and animal testing are the basis for the majority of Dannon's "clinical" studies of DanActive. This type of testing does not, and cannot, provide an adequate basis for the claims that Dannon makes for the effect of DanActive in people.  According to a report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002), while *in vitro* tests "are critical to assess the safety of probiotic microbes," the currently available tests "are not fully adequate to predict the functionality of probiotic microorganisms in the human body."  The Working Group encourages the study of probiotics in animals in those cases where appropriate animal models exist, but animal studies are not a substitute for human trials.

48.    According to the report of a Joint FAO/WHO Working Group on Drafting Guidelines for the Evaluation of Probiotics in Food (FAO Food and Nutrition, 2002): "Probiotics for human use will require substantiation of efficacy with human trials. . . .  The principal outcome of efficacy studies on probiotics should be proven benefits in human trials, such as statistically and biologically significant

improvement in condition, symptoms, signs, well-being or quality of life; reduced risk of disease or longer time to next occurrence; or faster recovery from illness."

49.     Dannon's claims about the benefits of DanActive are not substantiated by its own studies. Despite Dannon's advertisements and websites depicting the benefits of DanActive in healthy children and adults, few of its studies looked at healthy children and adults and only one tested whether DanActive could keep healthy people well.

50.     Dannon's claim that DanActive benefits students under stress is not substantiated by its one study in students.  Dannon claims that DanActive "helped to improve the body's production of defense cells in situation of intense intellectual stress during exams periods."  In its one study, DanActive had no effect on stress, since stress increased equally in both DanActive consumers and placebo consumers. And this study provides no evidence that the effect of DanActive on lymphocytes and CD56 cells was significant enough to matter.  The study did not compare illness rates between those consuming DanActive and those consuming a placebo.

51.     Likewise, Dannon's claim that numerous studies substantiate the ability of DanActive to build seniors' resistance to infections is not substantiated by its one study in healthy adults.  Dannon researchers gave older Italian men and women DanActive to drink every day for three weeks in an "open pilot" study, meaning they knew they were taking something that might help them.  Nevertheless, they were just as likely to get colds or gastrointestinal illnesses as a comparable group of seniors who did not drink DanActive.  Rather than conclude that DanActive improved seniors' resistance, the Dannon researchers recommended doing a larger, double-blind study.

52.     Similarly, Dannon's claim that DanActive improves the body's defense response during periods of "intense exercise" is not based on 25 to 30 studies, but on a single study in which competitive athletes consumed the equivalent of five bottles of DanActive – five times the recommended amount of DanActive.  Researchers did not

1  determine whether the lesser decrease in Natural Killer (NK) cells in DanActive
2  drinkers was significant enough to protect the athletes from getting sick.

3      53.  Likewise, Dannon's commercials, print advertisements, Internet
4  advertisements, and labels all claim that Activia with *Bifidus Regularis* is "for anyone
5  who wants to help naturally regulate their digestive system."  However, Dannon
6  reveals in its Scientific Summary for Health Care Professionals that "[i]n subjects
7  whose digestive system functions regularly, no marked change or risk of diarrhea was
8  observed."  *See* http://www.activia.us.com/pdf/Act_scientific_summary.pdf?v1.

9      54.  For example, as part of its message about Activia's benefits to the
10  digestive system, Dannon says that it has found that "slow intestinal transit is a source
11  of true discomfort for a large proportion of the population and results in daily distress"
12  and that "some of the symptoms include bloating, heaviness, and difficult and painful
13  defecation."  However, Dannon never studied this.  In none of the four human studies
14  of Activia did researchers ask the participants if Activia helped relieve bloating,
15  heaviness, or difficult and painful defecation, so Dannon's studies do not show that
16  Activia can relieve the symptoms described in their advertisements and on their
17  website.  As even one of Dannon's studies' notes, among the data concerning the
18  effects of Activia by Danone Group and its specific proprietary strain on intestinal
19  transit, there are currently relatively few results available concerning the relationship
20  between intestinal transit and bifidobacteria.

21      55.  Despite inadequate and inapposite testing, Dannon continues to
22  unequivocally claim that because of its specially formulated and unique bacteria in the
23  Products, the Products are clinically and scientifically proven to deliver health benefits
24  other yogurt products cannot.

25              **DANNON'S MARKETING SUCCESS**

26      56.  Despite merely providing the benefits of traditional yogurt products,
27  Dannon's Products cost significantly more than traditional yogurt.  For example,
28  *Consumer Reports* found that Activia costs about 30% more per ounce than Dannon's

1   own traditional yogurt.  Through the uniform deceptive and misleading marketing

2   campaign, Dannon leads consumers to believe that the scientifically and clinically

3   proven probiotic benefits "justify" the price differential.

4       57.    Through its marketing campaign, Dannon set out to not merely sell its

5   Products, but to sell them at a premium by creating a compelling story about its

6   "probiotic" bacteria.  Because of its claims, Dannon was able to, in its own words,

7   justify the premium charged for its Products over other yogurt products.  Dannon's

8   chief marketing officer explained: "To justify this type of price increase, you have to

9   have a relevant offer and the marketing has to tell the story."  Franck Riboud, Danone

10  Group's Chairman and CEO, echoed these sentiments.  The CEO stated that his goal

11  was to "cannibalize" the regular Dannon yogurt market in exchange for the higher

12  profit margins afforded by the so-called "blockbuster" product, Activia:

13        I'm very pleased to organize a cannibalization between a plain yoghurt

14        and Activia.  Please switch all of you from the plain yoghurt to Activia.

15        I will find [inaudible] solution for the plain yoghurt, but I am making

16        more money on Activia than the plain yoghurt.

17      58.    Dannon's CEO acknowledged that the success of Activia depended not

18  on the proven benefits of the product, but rather on how effective their advertising

19  proved.  Addressing analysts, he stated:

20        The success of Activia is not coming from the product itself.   The

21        probiotic, everybody knows now about probiotic all over the world.  The

22        success is coming from the way you launch the product, how do you

23        enrich the product, the marketing . . . .

24      59.    As one financial analyst wrote in describing the subject advertising

25  campaign: "Like antioxidants, most Americans don't understand what probiotics

26  actually do.  But, it's a great marketing word."  To accomplish this goal – persuading

27  consumers to switch from a less expensive yogurt product – Dannon had to paint a

28

1  compelling story that all persons would enjoy the Products' added and exclusive

2  health benefits.  The story Dannon's marketing tells is more fiction than fact.

3       60.    Dannon spent over $100 million from January 2006 through July 2007 on

4  the subject advertising campaign.  As a result of this campaign, the sale of the

5  Products skyrocketed.  The response from retailers and consumers has exceed

6  Dannon's expectations.  Activia accounted for $128 million of Dannon's $678 million

7  yogurt sales in 2006.  That number was expected to reach $300 million by the end of

8  2007.

9       61.    Dannon's "probiotic" yogurt advertising launch was one of the most

10  successful product launches in recent food-industry history.  For example, in the first

11  year, Activia reached sales that less than one-tenth of one percent of all new foods and

12  beverages achieve in their first year in the marketplace.  Further, within six months of

13  launch, Activia alone had achieved a remarkable 70% to 80% aided awareness among

14  all consumers, not just Dannon customers.

15  **CLASS ACTION ALLEGATIONS**

16       62.    Plaintiff brings this lawsuit on behalf of herself and the proposed

17  plaintiff Class members under Rule 23(b)(2) and (3) of the Federal Rules of Civil

18  Procedure.  The proposed Class consists of:

19       All persons who purchased in the United States DanActive or Activia or

20       Activia Lite.  Excluded from the Class are defendant's officers, directors

21       and employees and those who purchased the Products for the purpose of

22       resale.

23       63.    The Class comprises many tens of thousands of consumers

24  throughout California and the United States. The Class is so numerous that joinder

25  of all members of the Class is impracticable.  There are questions of law and fact

26  common to the Class.  The common questions include:

27       (a)    whether Dannon had adequate substantiation for its claims prior to

28  making them;

1             (b)      whether the claims discussed above are true, or are misleading, or

2 reasonably likely to deceive;

3             (c)      whether Dannon's alleged conduct violates public policy;

4             (d)      whether the alleged conduct constitutes violations of the laws

5 asserted herein;

6             (e)      whether Dannon engaged in false or misleading advertising;

7             (f)      whether plaintiff and Class members have sustained monetary loss

8 and the proper measure of that loss;

9             (g)      whether plaintiff and Class members are entitled to an award of

10 punitive damages; and

11            (h)      whether plaintiff and Class members are entitled to declaratory and

12 injunctive relief.

13        64.    Plaintiff's claims are typical of the claims of the proposed Class, and

14 plaintiff will fairly and adequately represent and protect the interests of the proposed

15 Class.  Plaintiff does not have any interests antagonistic to those of the Class.

16 Plaintiff has retained counsel competent and experienced in the prosecution of this

17 type of litigation.  The questions of law and fact common to the Class members,

18 some of which are set out above, predominate over any questions affecting only

19 individual Class members.

20        65.    A class action is superior to other available methods for the fair and

21 efficient adjudication of this controversy.  The expense and burden of individual

22 litigation would make it impracticable or impossible for proposed Class members to

23 prosecute their claims individually.  The trial and the litigation of plaintiff's claims

24 is manageable.

25        66.    Unless a class is certified, defendant will retain monies received as a

26 result of its conduct that was taken from plaintiff and proposed Class members.

27 Unless a classwide injunction is issued, defendant will continue to commit the

28

1  violations alleged, and the members of the Class and the general public will continue

2  to be misled.

3       67.    Dannon has acted and refused to act on grounds generally applicable to

4  the Class, making appropriate final injunctive relief with respect to the Class as a

5  whole.

6  ## COUNT I

7  **For Violations of the Consumers Legal Remedies Act –
Civil Code §1750 *et seq.* on Behalf of Plaintiff and the Class**

8

9       68.    Plaintiff realleges and incorporates by reference the allegations contained

10  in the paragraphs above as if fully set forth here.

11       69.    This cause of action is brought pursuant to the Consumers Legal

12  Remedies Act, California Civil Code §1750, *et seq.* (the "Act"). Plaintiff is a

13  consumer as defined by California Civil Code §1761(d). The Products are goods

14  within the meaning of the Act.

15       70.    Dannon violated and continues to violate the Act by engaging in the

16  following practices proscribed by California Civil Code §1770(a) in transactions with

17  plaintiff and the Class which were intended to result in, and did result in, the sale of

18  the Products:

19       (5)    Representing that [the Products have] . . . characteristics, . . . uses

20  [or] benefits . . . which they do not have . . . .

                     *       *       *

21

22       (7)    Representing that [the Products] are of a particular standard,

23  quality or grade . . . if they are of another.

                     *       *       *

24

25       (9)    Advertising goods . . . with intent not to sell them as advertised.

                     *       *       *

26

27       (16)    Representing that [the Products have] been supplied in accordance

28  with a previous representation when [they have] not.

- 21 -

71.     Dannon violated the Act by representing through its advertisements the Products as described above when it knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading.

72.     Pursuant to §1782 of the Act, plaintiff notified defendant in writing by certified mail of the particular violations of §1770 of the Act and demanded that defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.

73.     Pursuant to California Civil Code §1782(d), plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of defendant and for restitution and disgorgement.

74.     If defendant fails to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act, plaintiff will amend this Complaint to add claims for actual, punitive and statutory damages, as appropriate.

**COUNT II**

**Unlawful Business Acts and Practices in Violation of California Business and Professions Code Section 17200 *et seq.* on Behalf of Plaintiff, the General Public and the Class**

75.     Plaintiff repeats and realleges the allegations contained in the paragraphs above, as if fully set forth here.

76.     California Business and Professions Code §17200 prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Dannon has engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code §17200.

77.     California Business & Professions Code §17200 also prohibits any "unlawful . . . business act or practice."  Dannon has violated §17200's prohibition against engaging in unlawful acts and practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and

1   violating California Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, Business &

2   Professions Code §17200 *et seq.*, California Health & Safety Code §110765, and the

3   common law.

4        78.    Plaintiff and the Class reserve the right to allege other violations of law

5   which constitute other unlawful business acts or practices.  Such conduct is ongoing

6   and continues to this date.

7        79.    California Business & Professions Code §17200 also prohibits any

8   "unfair . . . business act or practice."

9        80.    Dannon's acts, omissions, misrepresentations, practices and non-

10   disclosures as alleged herein also constitute "unfair" business acts and practices within

11   the meaning of Business & Professions Code §17200 *et seq.* in that its conduct is

12   substantially injurious to consumers, offends public policy, and is immoral, unethical,

13   oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged

14   benefits attributable to such conduct.

15        81.    As stated in this Complaint, plaintiff alleges violations of consumer

16   protection, unfair competition and truth in advertising laws in California and other

17   states resulting in harm to consumers.  Plaintiff asserts violation of the public policy

18   of engaging in false and misleading advertising, unfair competition and deceptive

19   conduct towards consumers.  This conduct constitutes violations of the unfair prong of

20   California Business & Professions Code §17200 *et seq.*

21        82.    There were reasonably available alternatives to further Dannon's

22   legitimate business interests, other than the conduct described herein.

23        83.    Business & Professions Code §17200 also prohibits any "fraudulent

24   business act or practice."

25        84.    Dannon's claims, nondisclosures and misleading statements, as more

26   fully set forth above, were false, misleading and/or likely to deceive the consuming

27   public within the meaning of Business & Professions Code §17200.

28

85.     Dannon's conduct caused and continues to cause substantial injury to plaintiff and the other Class members.  Plaintiff has suffered injury in fact and has lost money as a result of Dannon's unfair conduct.

86.     Dannon has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling plaintiff to judgment and equitable relief against defendant, as set forth in the Prayer for Relief.

87.     Additionally, pursuant to Business & Professions Code §17203, plaintiff seeks an order requiring Dannon to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Dannon to engage in a corrective advertising campaign.

### COUNT III

**Breach of Express Warranty**
**On Behalf of Plaintiff and the Class**

88.     Plaintiff realleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

89.     Plaintiff, and each member of the Class, formed a contract with defendant at the time plaintiff and the other members of the Class purchased the Products.  The terms of that contract include the promises and affirmations of fact made by Dannon on its Product labels and through its marketing campaign, as described above.  This product labeling and advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between plaintiff and the members of the Class on the one hand, and Dannon on the other.

90.     All conditions precedent to Dannon's liability under this contract have been performed by plaintiff and the Class.

91.     Dannon breached the terms of this contract, including the express warranties, with plaintiff and the Class by not providing the product which could provide the benefits described above.

- 24 -

1       92.   As a result of Dannon's breach of its contract, plaintiff and the Class

2   have been damaged in the amount of the purchase price of the Products they

3   purchased.

**PRAYER FOR RELIEF**

4

5       Wherefore, plaintiff prays for a judgment:

6       A.    certifying the Class as requested herein;

7       B.    awarding plaintiff and the proposed Class members damages;

8       C.    awarding restitution and disgorgement of Dannon's revenues to plaintiff

9   and the proposed Class members;

10      D.    awarding declaratory and injunctive relief as permitted by law or equity,

11  including: enjoining defendant from continuing the unlawful practices as set forth

12  herein, and directing defendant to identify, with Court supervision, victims of its

13  conduct and pay them restitution and disgorgement of all monies acquired by

14  defendant by means of any act or practice declared by this Court to be wrongful;

15      E.    ordering Dannon to engage in a corrective advertising campaign;

16      F.    awarding attorneys' fees and costs; and

17      G.    providing such further relief as may be just and proper.

**JURY DEMAND**

18

19      Plaintiff demands a trial by jury on all issues so triable.

20  DATED: January 22, 2008        COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP

21          JOHN J. STOIA, JR.
        TIMOTHY G. BLOOD

22          LESLIE E. HURST
        THOMAS J. O'REARDON II

23

24

25                  TIMOTHY G. BLOOD

26          655 West Broadway, Suite 1900

27          San Diego, CA 92101
        Telephone: 619/231-1058
        619/231-7423 (fax)

28

- 25 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JONATHAN M. STEIN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

MAGER & GOLDSTEIN LLP
JAYNE A. GOLDSTEIN
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  954/515-0123
954/515-0124 (fax)

MAGER & GOLDSTEIN LLP
LEE ALBERT
1818 Market Street, Suite 3710
Philadelphia, PA  19103
Telephone:  215/640-3280
215/640-3281 (fax)

GILMAN AND PASTOR, LLP
DAVID PASTOR
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone: 617-742-9700
617/742-9701 (fax)

Attorneys for Plaintiff

S:\CptDraft\Consumer\CPT Dannon.doc