1   COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
2   JOHN J. STOIA, JR. (141757)
    jstoia@csgrr.com
3   TIMOTHY G. BLOOD (149343)
    tblood@csgrr.com
4   LESLIE E. HURST (178432)
    leslieh@csgrr.com
5   THOMAS J. O'REARDON II (247952)
    toreardon@csgrr.com
6   655 West Broadway, Suite 1900
    San Diego, CA  92101
7   Telephone:  619/231-1058
    619/231-7423 (fax)
8
    MAGER & GOLDSTEIN LLP
9   JAYNE A. GOLDSTEIN
    jgoldstein@magergoldstein.com
10  1640 Town Center Circle, Suite 216
    Weston, FL  33326
11  Telephone:  954/515-0123
    954/515-0124 (fax)
12
    Attorneys for Plaintiffs
13
    [Additional counsel appear on signature page.]
14
                    UNITED STATES DISTRICT COURT
15
                    CENTRAL DISTRICT OF CALIFORNIA
16
                         WESTERN DIVISION
17

18  PATRICIA WIENER and STEVEN R.      )   No. CV-08-00415-SJO(AGRx)
    BERUBE, On Behalf of Themselves,   )
19  All Others Similarly Situated and the )   CLASS ACTION
    General Public,                    )
                                       )   MEMORANDUM IN SUPPORT OF
20                       Plaintiffs,   )   PLAINTIFF'S MOTION FOR CLASS
                                       )   CERTIFICATION
21      vs.                            )
                                       )   Judge:   Honorable S. James Otero
22  THE DANNON COMPANY, INC.,          )   Date:    September 22, 2008
                                       )   Time:    10:00 a.m.
23                       Defendant.    )   Ctrm:    880
    _____)
24

25      REDACTED PURSUANT TO PROTECTIVE ORDER DATED
            JULY 14, 2008 AND LOCAL RULE 79-5.1
26

27

28

# TABLE OF CONTENTS

**Page**

I.  Introduction ................................................................................ 1

II. Factual Allegations ...................................................................... 2

    A.  "Probiotic" Bacteria ............................................................. 2

    B.  Dannon's Marketing Messages ............................................. 4

        1.  Activia and Activia Lite .................................................. 4

        2.  DanActive ..................................................................... 7

    C.  The Success of Dannon's Marketing Campaign ..................... 9

III. The Legal Claims at Issue ............................................................ 11

    A.  The UCL Claims .................................................................. 11

    B.  The CLRA Claim ................................................................. 12

    C.  Breach of Express Warranty ................................................. 13

IV. This Case Satisfies the Requirements of Rule 23 ......................... 13

    A.  Plaintiff Satisfies the Rule 23(a) Prerequisite....................... 14

        1.  Numerosity ................................................................... 14

        2.  Commonality ................................................................ 14

        3.  Typicality ..................................................................... 14

        4.  Adequacy of Representation............................................ 15

    B.  Rule 23(b)(3) Is Satisfied.................................................... 15

        1.  Common Questions Predominate Over Individual Issues........ 16

            a.  Plaintiff's Claims and Dannon's Defenses Are Identical as to All Class Members ............................... 16

            b.  Determination of Relief Does Not Destroy Predominance ....................................................... 18

        2.  A Class Action Is Superior to Other Available Methods of Adjudicating the Issues Raised ............................ 19

V.  Conclusion................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Amchem Prods. v. Windsor*,

5
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ...................... 13, 16

6

*Baby Neal for & by Kanter v. Casey*,
    43 F.3d 48 (3d Cir. 1994) ........................................................................ 15

7

8

*Bank of the W. v. Superior Court*,
    2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538 (1992) ........................................ 11

9

10

*Blackie v. Barack*,
    524 F.2d 891 (9th Cir. 1975) .................................................................. 18

11

12

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977) ................................................................... 18

13

14

*California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
    917 F.2d 1171 (9th Cir. 1990) ................................................................ 15

15

16

*California v. Levi Strauss & Co.*,
    41 Cal. 3d 460, 224 Cal. Rptr. 605 (1986) ............................................ 13

17

18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ................................... 12, 17

19

20

*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163, 96 Cal. Rptr. 2d 518 (2000) ................................... 12, 18

21

*Daar v. Yellow Cab Co.*,
    67 Cal. 2d 695, 63 Cal. Rptr. 724 (1967) .............................................. 13

22

23

*Daffin v. Ford Motor Co.*,
    458 F.3d 549 (6th Cir. 2006) .................................................................. 15

24

25

*Deposit Guaranty Nat'l Bank v. Roper*,
    445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) ....................... 20

26

27

*Dukes v. Wal-Mart, Inc.*,
    509 F.3d 1168 (9th Cir. 2008) ........................................................... 14, 15

28

1
2                                                                    **Page**

3   *Eisen v. Carlisle & Jacquelin,*
4       417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ............................... 14

5   *FTC v. Figgie Int'l,*
6       994 F.2d 595 (9th Cir. 1993) ......................................................................... 19

7   *Gold Strike Stamp Co. v. Christensen,*
        436 F.2d 791 (10th Cir. 1970) ....................................................................... 18
8
9   *Hanlon v. Chrysler Corp.,*
        150 F.3d 1011 (9th Cir. 1998) .......................................................... 14, 15, 20
10
11  *Heighley v. J.C. Penney Life Ins. Co.,*
        257 F. Supp. 2d 1241 (C.D. Cal. 2003) ......................................................... 11
12
13  *Hilao v. Estate of Marcos,*
        103 F.3d 767 (9th Cir. 1996) ......................................................................... 19
14
15  *In re Cont'l Corp./Lincoln Savs. & Loan Litig.,*
        140 F.R.D. 425 (D. Ariz. 1992) ..................................................................... 17
16
17  *In re First Alliance Mortg. Co.,*
        471 F.3d 977 (9th Cir. 2006) ............................................................ 13, 14, 17
18
19  *In re Visa Check/MasterMoney Antitrust Litig.,*
        280 F.3d 124 (2d Cir. 2001) ............................................................ 16, 18, 19
20
    *Kagan v. Gibraltar Sav. & Loan Ass'n,*
21      35 Cal. 3d 582, 200 Cal. Rptr. 38 (1984) ..................................................... 13
22
    *Kraus v. Trinity Management Services, Inc.,*
23      23 Cal. 4th 116 (2000) ................................................................................... 19
24
    *Lavie v. Procter & Gamble Co.,*
25      105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ................................... 11
26
    *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v.*
27          *Las Vegas Sands, Inc.,*
            244 F.3d 1152 (9th Cir. 2001) ................................................................... 16
28

1
2                                                                                         **Page**

3   *Massachusetts Mut. Ins. Co. v. Superior Court,*
4          97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002)...................................17

5   *McDonnell Douglas Corp. v. Thiokol Corp.,*
6          124 F.3d 1173 (9th Cir. 1997)....................................................................13

7   *McKell v. Washington Mut., Inc.,*
           142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006)...................................12
8
9   *Occidental Land v. Superior Court,*
           18 Cal. 3d 355, 134 Cal. Rptr. 388 (1976).....................................................17
10
11  *People v. Casa Blanca Convalescent Homes, Inc.,*
           159 Cal. App. 3d 509, 206 Cal. Rptr. 164 (1984).........................................12
12
13  *Rosario v. Livaditis,*
           963 F.2d 1013 (7th Cir. 1992)......................................................................15
14
15  *Saunders v. Superior Court,*
           27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994).......................................12
16
17  *Schnall v. Hertz Corp.,*
           78 Cal. App. 4th 1144, 93 Cal. Rptr. 2d 439 (2000) ....................................11
18
19  *Smilow v. SW Bell Mobile Sys., Inc.,*
           323 F.3d 32 (1st Cir. 2003) ..........................................................................18
20
    *State Farm Fire & Cas. Co. v. Superior Court,*
21         45 Cal. App. 4th 1093, 53 Cal. Rptr. 2d 229 (1996)....................................12
22
    *Staton v. Boeing Co.,*
23         327 F.3d 938 (9th Cir. 2003)........................................................................14
24
    *Thompson Med. Co. v. Fed. Trade Comm'n,*
25         791 F.2d 189 (D.C. Cir. 1986) .....................................................................17
26
    *Vasquez v. Superior Court,*
27         4 Cal. 3d 800, 94 Cal. Rptr. 796 (1971)....................................12, 13, 17, 20
28
    *Williams v. Gerber Food Prods. Co.,*
           523 F.3d 934 (9th Cir. 2008)....................................................................11, 12

**Page**

*Zinser v. Accufix Research Inst., Inc.*,
    253 F.3d 1180 (9th Cir. 2001)......................................................20


**STATUTES, RULES AND REGULATIONS**

California Business and Professions Code
    §17200 ..............................................................................*passim*
    §17203 ....................................................................................13

California Civil Code
    §1750 ...............................................................................*passim*
    §1770(a)...................................................................................13
    §1770(a)(5), (7), (9) and (16) ..................................................12
    §1781 ......................................................................................13

California Commercial Code
    §2313(1)(a).............................................................................13

Federal Rules of Civil Procedure
    Rule 23.............................................................................13, 14
    Rule 23(a) ........................................................................14, 15
    Rule 23(a)(1) ...........................................................................14
    Rule 23(a)(2) ...........................................................................14
    Rule 23(a)(3) ...........................................................................14
    Rule 23(b).................................................................................15
    Rule 23 (b)(3) ...................................................................*passim*
    Rule 23(g)(1) ...........................................................................15


**SECONDARY AUTHORITIES**

6 A. Conte & H. Newberg,
    *Newberg on Class Actions* (4th ed. 2002)
    §10:2 ......................................................................................18
    §10:3 ......................................................................................19
    §10:12 ....................................................................................19

1    Plaintiff Patricia Wiener ("Plaintiff") respectfully submits this memorandum in

2  support of her motion to certify a California class.

3  **I.    Introduction**

4    The Dannon Company, Inc. ("Dannon") has deceptively advertised its yogurt

5  products, Activia, Activia Lite and DanActive, enabling it to charge a premium for

6  these products and enjoy a meteoric rise in sales of an otherwise stagnant product

7  category.  Plaintiff seeks certification of California consumer protection laws – two of

8  which are expressly designed for class treatment.  With exacting precision driven by

9  Dannon's extensive market research, Dannon conveys its uniform and deceptive

10  message: the subject products contain "probiotic" bacteria that are "clinically proven"

11  to deliver health benefits that no other yogurt product can.  The uniformity of these

12  messages far exceed the Ninth Circuit's requirements for class certification.

13    Dannon claims that with the "natural culture *Bifidus Regularis*, Activia eaten

14  every day is clinically proven to help regulate your digestive system in two weeks."

15  Dannon follows the very same formula for DanActive.  Dannon claims: "Only

16  DanActive has *L. casei Immunitas*.  It is clinically proven to help strengthen your

17  body's defenses."

18    These claims are false and violate California's deceptive advertising and

19  consumer protection laws.  The issue presented by this motion, however, is not

20  whether these statements are in fact false or deceptive, but whether Plaintiff can

21  present her case on a classwide basis.  Because the messages are uniform and such

22  health claims can and are readily evaluated as true or not, class treatment is warranted.

23    Plaintiff seeks certification of her claims under the Unfair Competition Law,

24  Cal. Bus. & Prof. Code §§17200, *et seq.* ("UCL"), the Consumers Legal Remedies

25  Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"), and breach of express warranty on

26  behalf of the Class defined as:

27    All persons who purchased in California at any time up to

28    August 1, 2008, DanActive, Activia or Activia Lite.  Excluded

1    from the Class are defendant's officers, directors and employees

2    and those who purchased the products for the purpose of resale.

3    Plaintiff also seeks to be appointed class representative and her counsel to be

4    appointed class counsel.

5    **II.    Factual Allegations**

6     **A.    "Probiotic" Bacteria**

7      The World Health Organization defines probiotics as "live microorganisms

8    which when administered in adequate amounts, confer a health benefit on the host."

9    The National Institutes of Health's lead agency for complementary and alternative

10   medicine adds that probiotics have an ultimate goal of prevention and treatment of

11   disease.[1]  Most probiotics are bacteria.

12     Infusing "probiotic" bacteria into food is part of a larger food industry

13   marketing trend toward so-called "functional foods," which are generally defined as

14   foods that provide health benefits beyond basic nutrition.  The notion is that these

15   foods act more like supplements or medication than just food.  Yogurt is made with

16   and contains live bacterial cultures, so it is an easy candidate for "probiotic"

17   marketing claims.  Dannon, backed by its French parent Danone Group, S.A.

18   ("Danone Group") (the world's largest manufacturer of dairy products) is a leader in

19   promoting the probiotic fad.  Industry analysts expect the number of foods infused

20   with probiotics to continue to increase.  Dannon has leapt to the front of the

21   "functional food revolution" through the advertising campaign at issue here.

22     The use of probiotic bacteria is rooted in legitimate medical science.  Physicians

23   prescribe probiotic bacterial supplements for patients with specific diseases, usually

24   related to the gastrointestinal tract.  Komanduri Decl., ¶¶12-13.  The basic concept

25   behind using live bacteria to treat illness is as follows: the digestive tract (and certain

26   ───────────────────────

27   [1]    Declaration of Srinadh Komanduri, M.D., M.S. in Support of Plaintiff's Motion
28   for Class Certification ("Komanduri Decl."), ¶11.

1    other parts of the body) contains thousands of different kinds of bacteria. These
2    bacteria perform a large number of functions, many of which are essential to life and
3    health. Functions include aiding digestion, nutrient absorption, fighting off illness,
4    maintaining regular bowel function and many others. Scientists are just beginning to
5    understand some of the many functions bacteria in the gastrointestinal tract perform in
6    the overall health of human beings. But research is in its infancy. *Id.*, ¶12. In fact,
7    scientists have yet to identify all of the strains of bacteria present in the human
8    digestive tract.

9        These thousands of different kinds of bacteria are also constantly at war with one
10    another, competing for dominance. In healthy people, this bacterial war results in a
11    relatively stable state of equilibrium known as "homeostasis." Within the digestive tract,
12    there are no inherently good or beneficial bacteria. Too much of any one type of bacteria
13    upsets this equilibrium, resulting in illness. That is, too much good bacteria can be bad.

14        When legitimate physicians prescribe probiotic supplements, they introduce
15    into one's body a particular type (or types) of live bacteria, thereby re-achieving, or
16    perhaps mimicking, homeostasis. The mechanics are not yet understood, but the use
17    of certain bacterial supplements to treat a handful of diseases has been shown to be
18    effective. *Id.*, ¶¶12-13. The medical community is hopeful that future research will
19    yield additional uses of specific bacterial strains to treat certain types of disease.

20        The microbial make-up of each person differs significantly and depends on a
21    number of different factors, only some of which are known, including age, diet,
22    lifestyle and genetic make-up. The microbial make-up also differs from society to
23    society. For example, Europeans generally have a different gastrointestinal microbial
24    make-up than Americans. There also is no consensus on the quantities of probiotics
25    people might require to achieve a possible probiotic effect, or even if probiotics have
26    any such effect in healthy people.

27        The microbial make-up of the gastrointestinal system, the interaction among
28    various types of microbial bacteria and its interaction with the human body is described

1   by medical researchers as "extraordinarily complex." Far more is not known about

2   these bacteria and their interactions with each other and the human body than is known.

3       Into this new, largely unchartered and vastly complex scientific area enters the

4   yogurt company, Dannon. Dannon developed two strains of otherwise common

5   bacteria – one for Activia and another for DanActive. Developing new strains of

6   common bacteria is, in and of itself, no great feat. These two strains, according to

7   Dannon's advertisements, are "clinically proven" to deliver specific health benefits to

8   healthy people when they eat the subject products. Despite the uncertainty in the

9   scientific community surrounding probiotics, Dannon promises that all one must do to

10  improve a host of digestive problems is eat Activia, and to boost one's immune

11  system is to drink DanActive. And that these claims are "clinically proven."

12      **B.    Dannon's Marketing Messages**

13          **1.    Activia and Activia Lite**

14      Dannon's marketing claims that with the "natural culture Bifidus Regularis,

15  Activia eaten every day is clinically proven to help regulate your digestive system in

16  two weeks."[2] *See, e.g.*, Ex. 5 (view "BTYD 7114 Superiority REV 30DRTV").[3] A

17  typical commercial states:

18      Jamie Lee Curtis:   I used to think Yogurt was all the same, until I did a

19                          little reading in the yogurt aisle. If you experience

20                          occasional irregularity, you should know that only

21                          one yogurt, Activia, contains Bifidus Regularis and

22                          is clinically proven to help regulate your digestive

23                          system.

24

25

26  [2]     All references to "Ex." and Exs." herein are to the Declaration of Timothy G. Blood in Support of Plaintiff's Motion for Class Certification ("Blood Decl."), filed
27  concurrently herewith.

28  [3]     *See also* television commercials produced by Dannon, attached as Exs. 4, 5.

- 4 -

| | | |
|---|---|---|
| 1 | Announcer: | **With the natural culture Bifidus Regularis, Activia** |
| 2 | | **eaten every day is clinically proven to help regulate** |
| 3 | | **your digestive system in two weeks.** |
| 4 | Jamie Lee Curtis: | Activia's a good read.  You'll love how the story |
| 5 | | ends.[4] |

6  Another typical commercial states:

| | | |
|---|---|---|
| 7 | First Student: | Hey, you feel like going out? |
| 8 | Second Student: | I'm bloated, irregular. |
| 9 | First Student: | Probably stress from exams.  Look how it makes us |
| 10 | | eat.  [*Shows partially eaten pizza and spaghetti.*] |
| 11 | Second Student: | So how come you're okay? |
| 12 | First Student: | I eat Activia, every day. |
| 13 | Announcer: | **Introducing smooth delicious Dannon Activia with** |
| 14 | | **the natural culture Bifidus Regularis, it's clinically** |
| 15 | | **proven to help naturally regulate your digestive** |
| 16 | | **system in two weeks.** |
| 17 | First Student: | It's good.  I feel great. [*Shown eating Activia.*] |
| 18 | Announcer: | Help naturally regulate your digestive system in two |
| 19 | | weeks. |
| 20 | First Student: | Come on, let's get out of here.  [*Caption "Two* |
| 21 | | *weeks later" displayed with students looking fresh* |
| 22 | | *and energetic.*][5] |

23  The bolded tag line appears throughout the various versions of commercials.
24  Television commercials for Activia have aired regularly across the country since its
25  nationwide launch in February 2006.  Ex. 7.

26

27  [4]     Ex. 5 (view "BTYD 7099 Reading DRTV").

28  [5]     Ex. 5 (view "Students 30 BTYD5024").

1   "*Bifidus* Regularis" is Dannon's trademarked name for the proprietary

2   *Bifidobacterium animalis* subsp. *animalis* strain DN-173-010, a strain of

3   bifidobacterium. The Latinate of "Regular" implies scientific significance. Activia's

4   label appears as:[6]



15   Inside every Activia label, Dannon also prominently claims: "**CLINICALLY**

16   **PROVEN** to help in two weeks, when eaten daily" and "contains natural probiotic

17   culture – **Bifidus Regularis**™ – only in Activia®."

18   To reinforce the deceptive message, Dannon began in the fall of 2006 to tout a

19   money-back guarantee which it named the "Activia Challenge," promising that

20   Activia "works or it's free."[7] Dannon's "it works or it's free" claim adds to the

21   deception because such marketing results in a placebo effect on consumers,

22   irrespective of any actual probiotic effect.[8] It is also a well established marketing tool

23

24   ───────────────

25   [6]      Activia and DanActive packaging and labels are attached as Ex. 6.

26   [7]      Ex. 5 (view "BTYD 6071"; *see also id.* (view "BTYD 7018 Pass It On MAP 30
       DRTV").

27   [8]      Ex. 23 at 7.

28

- 6 -

1    used to convince consumers of its message – such guarantees do not lead to the return

2    of product from unhappy customers.[9]

3          Dannon also conveys the message that Activia cures a wide range of common

4    digestive problems.  It explains that Activia with *Bifidus* Regularis will improve the

5    "digestive issues" reported by 87% of the general population.[10]

6          Throughout its advertisements, Dannon bolsters its "clinically proven" claim by

7    referencing scientific studies.  For example, one commercial explains that to find out

8    whether Activia works, "you can check out any of the multiple clinical studies that

9    have been conducted – just log on to activia.com."[11]  Dannon's website then identifies

10   studies that purport to constitute the clinical proof.[12]

11         **2.    DanActive**

12   ███████████████████████████████████ less than a year following the

13   release of Activia, in January 2007, Dannon launched DanActive nationwide, a

14   "probiotic drink that is clinically proven to help your body's defense system."[13]

15   DanActive comes in 100 ml "daily dose" bottles.

16         As with Activia, Dannon promises that DanActive provides clinically proven

17   health benefits that other similar products cannot because it contains proprietary

18   probiotic bacteria.  In its television commercials, it states: "Only DanActive has *L.*

19   *casei Immunitas*, and is clinically proven to help strengthen your body's defenses."

20   *See, e.g.*, Ex. 5 (view "BTAC 7059 JASP Plus Plus 30").  *L. casei* Immunitas is

21

22   [9]    Declaration of Carol Scott, Ph.D. in Support of Plaintiff's Motion for Class
23   Certification filed concurrently ("Scott Decl."), ¶10.

24   [10]   Ex. 5 (view "BTYD 7094 News Rev DRTV 30").

25   [11]   Ex. 5 (view "BTYD 7108 Take Your Pick DRTV_").

26   [12]   Activia.com, List of Peer-Reviewed Scientific Summaries, http://
     www.activia.us.com/pdf/Act_scientific_summary.pdf?v1 (last visited July 27, 2008).

27   [13]   ████; DanActive.com, Questions & Answers, http://www.danactive.com/
28   danactive_faq.html (last visited July 28, 2008); Ex. 6.

- 7 -

1    Dannon's trademarked *Lactobacillus casei* strain DN-114 001.  Just as with its use of

2    "Regularis" in Activia, Dannon Latinates "immunity."

3            A typical commercial states:

4        Mother:        Between  exams,  after  school  activities,  and  tons  of

5                       homework, my kid never stops.

6        Announcer:   Your kids have a hectic life and don't always eat right, and

7                       you  don't  want  their  defenses  to  be  weak.    Delicious

8                       DanActive can help strengthen them.  ***Only DanActive has***

9                       ***L. casei Immunitas cultures and is clinically proven to***

10                      ***help strengthen your body's defenses.***

11       Mother:        And a little strengthening can really help.

12       Announcer:   Help strengthen your family's bodies' defenses.

13   Another commercial states:

14       Announcer:   Did you know that lack of sleep may also weaken your

15                      body's defenses?  Between the stress of working, raising

16                      kids and finding time for friends, you don't get enough

17                      sleep.  And all that can challenge your body's defenses.

18                      But you can help strengthen them with DanActive.  About

19                      70% of your immune system is in your digestive tract.

20                      ***Only DanActive has L. casei Immunitis and is clinically***

21                      ***proven to strengthen your body's defenses.***  DanActive,

22                      helps strengthen your body's defenses.[14]

23   In each commercial also appears the written words "clinically proven."

24

25

26

27   ────────────────────

28   [14]      Ex. 5 (view "BTAC 7071 Backpack 30").

Inside DanActive labels and labeling, Dannon repeats: "Clinically Proven To Help Strengthen Your Body's Defenses."[15]  Dannon further conveys and reinforces this claim by prominently placing on every label the word "IMMUNITY":

 

As with Activia, Dannon states its claims are backed by medical research.  It represents that "more than 25 studies have shown the effectiveness of DanActive and L. casei Immunitas."[16]

### C.    The Success of Dannon's Marketing Campaign

Companies, including Dannon, have been selling yogurt for generations.  The yogurt market was mature and stable.  Yet, Dannon's deceptive advertising campaign has shaken up this market segment.  Since the nationwide launches in 2006 and 2007, ███████████████████████████████ saturating the media with Activia and

---

[15]    Ex. 6.

[16]    Ex. 5 (view "BTAC 7055" and "BTAC 7059 JASP Plus Plus 30"); DanActive.com, List of Peer-Reviewed Scientific Summaries, http://www.danactive.com/8044-Lactobacillus%20Casei%20Clin%20Study_a.pdf (last visited July 27, 2008).

1    DanActive advertisements.  Ex. 9 at 1.[17]  Most of the advertising is in the form of
2    television commercials that have been highly effective at conveying Dannon's
3    message.[18]

4        In the first year of nationwide sales, Dannon sold more than $130 million worth
5    of Activia, more than three times Dannon's forecast, ████████████████████
6    ███████████████████████████████████████████████████████████
7    ███████.  The Activia launch reached a level achieved by less than one tenth of one
8    percent of all product launches.[19]  Answer, ¶10.  Dannon's sales have been meteoric:

9
10
11
12
13
14
15

16    By the end of 2008, Dannon projects wholesales sales █████████████, which
17    translates to the retail price paid by consumers nationwide ███████████[20]

18        The claims of clinically proven health benefits from exclusive probiotic cultures
19    have allowed Dannon to charge a premium of up to 50% more over other yogurt
20    _____
21    [17]  *See also* ████████████████████████████████████████████████
     ████████████████████.
22    [18]  Ex. 11 at 44; Ex. 12 at 55 (████████████████████████████████████
23    ██████████); Ex. 13 at 15 (████████████████████████████████████████
24    ███████████████████████████████████████████████████████████
25    ████████████████████████████████); Ex. 14 at 4, 33, 35; Ex. 11 at 4;
     Ex. 15 at 3, 31; Ex. 12 at 27; Ex. 14 at 51; Ex. 16 at 16; Ex. 13 at 5, 52.
26    [19]    *See* Defendant The Dannon Company, Inc.'s Answer to Patricia Wiener's
27    Putative Class Action Complaint, dated April 11, 2008 ("Answer").
28    [20]    Ex. 17.

1  products.   Answer, ¶56; Blood Decl., ¶6.   According to Dannon's ███████

2  ████████████████████████████████████████████████████████████████

3  ███████████████████████████████████████[21]   As Danone Group's CEO

4  explained, "When they eat an Activia, I make more money than when they eat a plain

5  yoghurt."   Ex. 19 at 9.[22]   The CEO explains that he has "organize[d] a

6  cannibalization" of the regular yogurt market.[23]

7  **III.    The Legal Claims at Issue**

8      **A.    The UCL Claims**

9      To succeed in their claim under the "fraudulent" prong of the UCL, Plaintiff

10  "need only show that 'members of the public are likely to be deceived'" by that

11  campaign.[24] *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507-08, 129 Cal.

12  Rptr. 2d 486 (2003); *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266-67,

13  10 Cal. Rptr. 2d 538 (1992); *Williams v. Gerber Food Prods. Co.*, 523 F.3d 934, 939-

14  40 (9th Cir. 2008).   Unlike common law fraud, Plaintiff need not prove that every Class

15  member "'was actually deceived, relied upon the fraudulent practice, or sustained any

16  damage.'" *Heighley v. J.C. Penney Life Ins. Co.*, 257 F. Supp. 2d 1241, 1259 (C.D.

17  Cal. 2003); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1167, 93 Cal. Rptr. 2d 439

18  (2000).   Advertising that is likely to deceive the reasonable consumer violates the false

19  advertising law. *Williams*, 523 F.3d at 938.

---

21  [21]    *See, e.g.*, Ex. 10 at 42 (█████████████████████████████████); Ex. 15

22  at 65 (███████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████) *See* Ex. 15 at
35, 37; Ex. 11 at 74, 76; Ex. 10 at 29; Ex. 13 at 6, 61.

24  [22]    *See also* Ex. 20 at 9 ("obviously, the margin on [Activia] on an ongoing period
is far better than plain yogurt"); Ex. 21 at 6 ("[DanActive] is a product where by

25  construction we will have a much better operating margin.").

26  [23]    Ex. 20 at 9.

27  [24]    Unless otherwise noted, citations are omitted and emphasis is added throughout

28  plaintiff's memorandum.

1    The UCL similarly prohibits "unfair, deceptive, untrue or misleading

2   advertising." Cal. Bus. & Prof. Code §17200. Advertising is broadly defined to

3   include virtually any statement made in connection with the sale of goods or services,

4   including statements and pictures on labels. *Williams*, 523 F.3d at 939.

5    "Unlawful" business acts or practices within the meaning of the UCL "'include

6   anything that can properly be called a business practice and that at the same time is

7   forbidden by law.'" *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1475,

8   49 Cal. Rptr. 3d 227 (2006) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular*

9   *Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999)) (internal quotations

10   omitted). The UCL therefore permits violations of other laws to be treated as unfair

11   competition that is independently actionable. *McKell*, 142 Cal. App. 4th at 1474-75.

12   A violation of the underlying law is a *per se* violation of the UCL. *Saunders v.*

13   *Superior Court*, 27 Cal. App. 4th 832, 33 Cal. Rptr. 2d 438 (1994).

14    The unfair "prong" of the UCL may be established by weighing "the utility of

15   the defendant's conduct against the gravity of the harm to the alleged victim." *State*

16   *Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1104, 53 Cal. Rptr.

17   2d 229 (1996). A business practice is unfair when it offends an established public

18   policy or when the practice is immoral, unethical, oppressive, unscrupulous or

19   substantially injurious to consumers. *People v. Casa Blanca Convalescent Homes,*

20   *Inc*., 159 Cal. App. 3d 509, 530, 206 Cal. Rptr. 164 (1984). False advertising has no

21   utility and never constitutes a justified business practice. *Vasquez v. Superior Court*, 4

22   Cal. 3d 800, 808, 94 Cal. Rptr. 796 (1971).

23    The statute imposes strict liability for violations of the UCL. *Cortez v.*

24   *Purolator Air Filtration Prods. Co*., 23 Cal. 4th 163, 181, 96 Cal. Rptr. 2d 518 (2000).

25   **B.    The CLRA Claim**

26    A defendant is liable under the CLRA if it misrepresents that its goods possess

27   certain characteristics, uses or benefits that it does not have or advertises goods with

28   the intent not to sell them as advertised. Cal. Civ. Code §1770(a)(5), (7), (9) and (16).

1   The statute is violated "in a transaction intended to result or which results in the sale

2   or lease of goods or services . . . ."  Cal. Civ. Code §1770(a).  As explained by the

3   California Supreme Court, one who bought the subject product is entitled to recovery

4   if the defendant violated the CLRA.  *Kagan v. Gibraltar Sav. & Loan Ass'n*, 35

5   Cal. 3d 582, 593, 200 Cal. Rptr. 38 (1984).

6       **C.    Breach of Express Warranty**

7       "Any affirmation of fact or promise made by the seller to the buyer which

8   relates to the goods and becomes part of the basis of the bargain creates an express

9   warranty that the goods shall conform to the affirmation or promise."  Cal. Com. Code

10  §2313(1)(a); *McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th

11  Cir. 1997).  Thus, the analysis turns on the promises made by defendant.

12  **IV.    This Case Satisfies the Requirements of Rule 23**

13      Consumer protection claims are ideal for class certification.  *See, e.g., Amchem*

14  *Prods. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); *In*

15  *re First Alliance Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006); *California v. Levi*

16  *Strauss & Co.*, 41 Cal. 3d 460, 471, 224 Cal. Rptr. 605 (1986); *Vasquez*, 4 Cal. 3d at

17  808; *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695, 704, 63 Cal. Rptr. 724 (1967).

18      Such cases are particularly appropriate for class treatment because "the amount

19  of individual recovery would be insufficient to justify bringing a separate action; thus

20  an unscrupulous seller retains the benefits of its wrongful conduct."  *Vasquez*, 4 Cal.

21  3d at 808; *see also Amchem*, 521 U.S. at 617 (policy at core of class action mechanism

22  is to permit adjudication of small recovery claims).

23      Plaintiff's statutory claims expressly provide for class certification.  The CLRA

24  even includes class action prerequisites in its provisions.  *See* Cal. Civ. Code §1781;

25  *see also* Cal. Bus. & Prof. Code §17203 (claimants "may pursue representative claims

26  or relief on behalf of others" for violations of the UCL, including false advertising).

27      Class certification presents a procedural issue and not a merits determination.

28  "'In determining the propriety of a class action, the question is not whether the

1  plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but

2  rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlisle & Jacquelin*,

3  417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  The Court may consider

4  evidence which goes to the requirements of Rule 23, but should not weigh competing

5  evidence.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003).  As detailed

6  below, Plaintiff satisfies each of the prerequisites of Rule 23(a) and (b)(3).

7  **A.    Plaintiff Satisfies the Rule 23(a) Prerequisite**

8  Rule 23(a) enumerates four prerequisites for class certification, referred to as:

9  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Each of these

10  requirements is met here.

11  **1.    Numerosity**

12  Rule 23(a)(1) requires the class to be so numerous that joinder of individual

13  class members is impracticable.  Dannon admits numerosity is met.  Ex. 22 at 3; *see*

14  *also* Ex. 17 (███████████████████).  The numerosity requirement is

15  readily satisfied.

16  **2.    Commonality**

17  Rule 23(a)(2) commonality is a minimal requirement that may be met by one

18  issue of law or fact.  *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (9th Cir. 2008);

19  *First Alliance*, 471 F.3d at 990-91.  Common issues here include whether clinical

20  proof exists to substantiate Dannon's health claims and whether the alleged lack of

21  substantiation violates California's consumer protection laws.  Similarly, common

22  issues exist as to whether Dannon's promises create a warranty, whether the warranty

23  was breached, and whether a classwide injunction or corrective advertising is

24  warranted.

25  **3.    Typicality**

26  Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably

27  co-extensive" with absent class members' claims.  They need not be "substantially

28  identical."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *Dukes*,

1  509 F.3d at 1184.  Typicality is satisfied where the class was injured through an

2  alleged common practice.  *Id.*; *Hanlon*, 150 F.3d at 1020; *California Rural Legal*

3  *Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990); *Baby Neal*

4  *for & by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("even relatively pronounced

5  factual differences will generally not preclude a finding of typicality where there is a

6  strong similarity of legal theories"); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552-53

7  (6th Cir. 2006); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (focus is on

8  the "defendants' conduct and plaintiff's legal theory").

9    Typicality is met here as Plaintiff and the proposed Class assert precisely the

10  same claims, which arise from the same course of conduct – Dannon's marketing

11  campaign.  Dannon advertised to all that the proprietary probiotic bacteria in the

12  subject products provide clinically proven benefits.

13      **4.**  **Adequacy of Representation**

14    For adequacy, the issue is whether "the named plaintiffs and their counsel have

15  any conflicts of interest with other class members," and whether "the named plaintiffs

16  and their counsel will prosecute the action vigorously on behalf of the class."  *Hanlon,*

17  150 F.3d at 1020.  The interests of Plaintiff Wiener and the Class members are fully

18  aligned in determining whether Dannon falsely advertised the subject products.  *See*

19  Wiener Decl., ¶¶5-6.  Further, Plaintiff retained counsel with significant experience in

20  prosecuting large consumer fraud class actions, who should also be appointed Class

21  counsel.  *See* Blood Decl., Exs. 1-3.  The adequacy requirement is met.[25]

22  **B.**  **Rule 23(b)(3) Is Satisfied**

23    In addition to the prerequisites set for in Rule 23(a), a class must also constitute

24  one of the types of classes under Rule 23(b).  Under Rule 23(b)(3), certification is

25  _____

26  [25]  Rule 23(g)(1) also requires the Court to appoint class counsel.  For the reasons

27  stated in the Blood Decl., Plaintiff requests the Court appoint Coughlin Stoia Geller Rudman & Robbins LLP, Mager & Goldstein, LLP and Gilman and Pastor, LLP as

28  Class Counsel.

appropriate if (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001).

### 1. Common Questions Predominate Over Individual Issues

"Predominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem*, 521 U.S. at 625. In evaluating whether common issues predominate over individual issues, the class-wide issues should constitute a significant aspect of the case. The predominance "inquiry trains on legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem*, 521 U.S. at 623; *Culinary/Bartender Trust Fund*, 244 F.3d at 1162. The requirement demands only predominance of common questions, not exclusivity or unanimity of them. Rule 23(b)(3); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001).

### a. Plaintiff's Claims and Dannon's Defenses Are Identical as to All Class Members

This action meets the predominance requirement because the issue that would be the central issue for every claimant is whether Dannon's advertising messages are true. Are the subject products "clinically proven" to provide the stated health benefits? These claims can be evaluated by medical research. Even Dannon concedes this, referring to medical studies as substantiation for its own advertisements.

The claims at issue, known as "specific establishment" claims, require the advertiser to possess the specific substantiation claimed in the advertisement at the

1  time the claims are made.  *Thompson Med. Co. v. Fed. Trade Comm'n*, 791 F.2d 189,

2  194 (D.C. Cir. 1986).[26]  So here, Dannon must actually possess clinical proof.

3          This type of case should be certified because "[f]requently numerous consumers

4  are exposed to the same dubious practice by the same seller so that proof of the

5  prevalence of the practice as to one consumer would provide proof for all." *Vasquez*,

6  4 Cal. 3d at 808.  *Vasquez* was a fraud case involving misrepresentations made orally

7  by a sales force.  *Id.* at 811-12.  Under California law, one is entitled to an inference of

8  reliance if the representations are similar and material.  *Id.*; *see also Occidental Land*

9  *v. Superior Court*, 18 Cal. 3d 355, 363, 134 Cal. Rptr. 388 (1976).  The Ninth Circuit

10 also permits certification of common law fraud claims, in addition to the more

11 certifiable consumer fraud claims presented here, where the claims of "similar

12 misrepresentations" "stem[ ] from a 'common course of conduct,'" even in the face of

13 "slight differences in class members' positions." *First Alliance*, 471 F.3d at 989-90.

14 *First Alliance* also involved oral misrepresentations.  It expressly rejected a

15 "'talismanic rule that a class action may not be maintained where a fraud is

16 consummated principally through oral misrepresentations unless those representations

17 are all but identical.'" *Id.* at 991 (quoting *In re Cont'l Corp./Lincoln Savs. & Loan*

18 *Litig.*, 140 F.R.D. 425 (D. Ariz. 1992).  *See also Massachusetts Mut. Ins. Co. v.*

19 *Superior Court*, 97 Cal. App. 4th 1282, 119 Cal. Rptr. 2d 190 (2002) (certifying UCL

20 and CLRA class involving deceptive marketing campaign using varied oral

21 presentations and misleading written materials).

22          This case involves television commercials that conveyed a uniform message.

23 The evidence of whether this message is "clinically proven" can be examined like any

24 other health claims – on a classwide basis.  Komanduri Decl., ¶¶16-17.

25

26

27 [26]       Because the UCL was patterned after the FTC Act, decisions by federal courts
   construing the FTC Act "are more than ordinarily persuasive" in construing the UCL.

28 *Cel-Tech*, 20 Cal. 4th at 185.

### b. Determination of Relief Does Not Destroy Predominance

"The amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975). "Individual damage issues should not, except in extraordinary situations, have any adverse effect on the propriety of aggregate class judgments as a proper means for determining the defendant's liability to the class." 6 A. Conte & H. Newberg, *Newberg on Class Actions*, §10:2 (4th ed. 2002) ("*Newberg*"). Accordingly, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain." *Smilow v. SW Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) (citing *Visa Check/MasterMoney*, 280 F.3d at 139; *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977); *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 786 (10th Cir. 1970)). "[T]he ultimate goal in class actions is to determine the aggregate sum, which fairly represents the collective value of claims of individual class members." *Newberg* §10:2. A case such as this, presenting garden-variety consumer claims, does not constitute an extraordinary situation.

First, Plaintiff's request for injunctive relief and corrective advertising presents no individual issues. FAC ¶¶73, 74, 87-88.[27] Second, the request for restitutionary relief is readily manageable. *Id.* Under the UCL, the Court is given "very broad" discretion to fashion equitable awards of restitutionary relief, intended to prevent the wrongdoer's unjust enrichment. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 180 (2000). This discretion includes how the restitution fund is distributed. Third, the monetary damages for violations of the CLRA and breach of express warranty are readily calculable by several different methods. FAC, ¶¶75, 93. Two alternate measures of damages exist, and each can be employed to calculate aggregate

---

[27]     References to "FAC" are to the First Amended Class Action Complaint, filed July 22, 2008.

classwide damages using Dannon's own internal documents and retail price survey information.  The first is the repayment of purchase price paid.  *FTC v. Figgie Int'l*, 994 F.2d 595, 605 (9th Cir. 1993).  The second is the repayment of the difference in the cost of the subject products and other equivalent products.[28]  Accordingly, where, as here, Plaintiff's methods of proof are sufficiently reliable, there is "no room" for Dannon to complain because "[a]ggregate proof of the defendant's monetary liability is no more unfair than class treatment of other elements of liability."  *Newberg*, §10:3.[29]

### 2. A Class Action Is Superior to Other Available Methods of Adjudicating the Issues Raised

Rule 23(b)(3) sets forth the relevant factors for determining whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  These factors include:  (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. "'[C]onsideration of these factors requires the court to focus on the efficiency and

---

[28]    These calculations can be made from Dannon's own data (which Dannon has yet to produce).  To the extent that any information might possibly result in a damage calculation that is higher than the actual amount, more conservative calculations can be made, going as low as Dannon's net sales figures for the subject products and its comparable products, such as its regular yogurt product and Danimals drinkable yogurt.  Dannon cannot complain about such an approach because it is properly only interested in the aggregate amount of an award of damages or restitution.  *Hilao v. Estate of Marcos*, 103 F.3d 767, 786 (9th Cir. 1996).

[29]    This case poses no extraordinary distribution issues. The Court may award individual damages or restitution based on a claimant's submission of the amount of product purchased or on a *per capita* or average methodology basis, processing claims by a claims administrator supervised by Class counsel or, if needed, a special master or court-appointed counsel.  *Newberg*, §10:12 (citing *Visa Check/MasterMoney*, 280 F.3d 124).  Further, under the UCL claim, California law requires Dannon to find class members.  *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, (2000).

1  economy elements of the class action so that cases allowed under subdivision (b)(3)

2  are those that can be adjudicated most profitably on a representative basis.'" *Zinser v.*

3  *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

4      The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class

5  certification here.    Liability in this action will turn on whether Dannon's

6  advertisements relating to consumer products were false or misleading.  It is neither

7  economically feasible, nor judicially efficient, for the many thousands of Class

8  members to pursue their claims against Dannon on an individual basis. *Hanlon*, 150

9  F.3d at 1023; *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 338-39, 100 S. Ct.

10 1166, 63 L. Ed. 2d 427 (1980); *Vasquez*, 4 Cal. 3d at 808.  Here, there simply is no

11 other practical method of adjudicating these claims.

12 **V.    Conclusion**

13     For each of the foregoing reasons, Plaintiff's motion for class certification

14 should be granted.

15 DATED:  July 28, 2008                    Respectfully submitted,

16                                          COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
17                                          JOHN J. STOIA, JR.
                                            TIMOTHY G. BLOOD
18                                          LESLIE E. HURST
                                            THOMAS J. O'REARDON II
19
                                              s/ Timothy G. Blood
20                                          TIMOTHY G. BLOOD

21                                          655 West Broadway, Suite 1900
22                                          San Diego, CA  92101
                                            Telephone:  619/231-1058
23                                          619/231-7423 (fax)

24                                          COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP
25                                          JONATHAN M. STEIN
                                            120 East Palmetto Park Road, Suite 500
26                                          Boca Raton, FL  33432
                                            Telephone:  561/750-3000
27                                          561/750-3364 (fax)

28

1

2

3

4

MAGER & GOLDSTEIN LLP
JAYNE A. GOLDSTEIN
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  954/515-0123
954/515-0124 (fax)

5

6

7

MAGER & GOLDSTEIN LLP
LEE ALBERT
1818 Market Street, Suite 3710
Philadelphia, PA  19103
Telephone:  215/640-3280
215/640-3281 (fax)

8

9

10

11

GILMAN AND PASTOR, LLP
DAVID PASTOR
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone: 617-742-9700
617/742-9701 (fax)

12

Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

S:\CasesSD\Dannon\BRF 00052765_Redacted.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 28, 2008.

  s/ Timothy G. Blood
TIMOTHY G. BLOOD

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  timb@csgrr.com

# Mailing Information for a Case 2:08-cv-00415-SJO-AGR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lee Albert**
  lalbert@magergoldstein.com

- **Timothy G Blood**
  timb@csgrr.com

- **Jonathan W Cuneo**
  jonc@cuneolaw.com

- **Bruce A Friedman**
  bruce.friedman@bingham.com,donna.mcgee@bingham.com

- **Angel A Garganta**
  angel.garganta@aporter.com,cathryn.tully@aporter.com,maryanne.donaldson@aporter.com,kendr

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Jayne A Goldstein**
  jgoldstein@magergoldstein.com

- **Leslie Hurst**
  leslieh@csgrr.com

- **Trenton H Norris**
  trent.norris@aporter.com,delicia.soza@aporter.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **David Pastor**
  dpastor@gilmanpastor.com

- **Mark P Pifko**
  mark.pifko@aporter.com

- **Gina M Simas**
  gina.simas@bingham.com

- **Jonathan M Stein**
  jstein@csgrr.com,e_file_fl@csgrr.com

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Jayne A Goldstein**
Mager   and Goldstein LLP
1640 Town Center Circle Ste 216
Weston, FL 33326

- 24 -