COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
JOHN J. STOIA, JR. (141757)
jstoia@csgrr.com
TIMOTHY G. BLOOD (149343)
tblood@csgrr.com
LESLIE E. HURST (178432)
leslieh@csgrr.com
THOMAS J. O'REARDON II (247952)
toreardon@csgrr.com
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

MAGER & GOLDSTEIN LLP
JAYNE A. GOLDSTEIN
jgoldstein@magergoldstein.com
1640 Town Center Circle, Suite 216
Weston, FL  33326
Telephone:  954/515-0123
954/515-0124 (fax)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| PATRICIA WIENER and STEVEN R. BERUBE, On Behalf of Themselves, All Others Similarly Situated and the General Public,<br><br>Plaintiffs,<br><br>vs.<br><br>THE DANNON COMPANY, INC.,<br><br>Defendant. | No. CV-08-00415-SJO(AGRx)<br><br>CLASS ACTION<br><br>DECLARATION OF CAROL SCOTT, PH.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>Judge:   Honorable S. James Otero<br>Date:    September 22, 2008<br>Time:    10:00 a.m.<br>Ctrm:    880 |

**SELECT PAGES OF EXHIBIT 3 AND OF THE DECLARATION
REDACTED PURSUANT TO PROTECTIVE ORDER DATED
JULY 14, 2008 AND LOCAL RULE 79-5.1**

1    I, Carol Scott, Ph.D., declare:

2    1.    I am a Professor of Marketing at the Anderson Graduate School of
3    Management of the University of California, Los Angeles ("UCLA"). I hold a Ph.D.
4    in Marketing from Northwestern University, where my minor field of study was
5    Social Psychology. I also received a Master of Science in Management degree from
6    Northwestern University and a Bachelor of Science in Business and History Education
7    degree from the University of Texas at Austin. I have served variously as the
8    Chairman of the Faculty, Associate Dean, and Assistant Dean of the Anderson
9    Graduate School of Management from 1985 through 1994. I am currently the faculty
10   director of the Anderson School Executive Program. A true and correct copy of my
11   Curriculum Vitae, including a list of publications, is attached hereto as Exhibit 1. I
12   have personal knowledge of the matters stated herein and if called as a witness could
13   competently testify to them.

14   2.    Over the past 30 years, I have taught courses on Marketing Strategy and
15   Management, Consumer Behavior, Advertising, Distribution Strategy, and
16   International Marketing to students in undergraduate and graduate education programs
17   at UCLA, Harvard Business School, and Ohio State University. I also have published
18   numerous journal articles, research reports, and book chapters on Consumer Behavior,
19   Marketing Research and other marketing topics. I have served on the editorial boards
20   of the Journal of Marketing, Journal of Marketing Research, and the Journal of
21   Consumer Research. I have been a member of the board of directors for Sizzler
22   International and A-Fem Medical Corporation, Inc. and currently am a member of the
23   board of directors of United Online and Classmates Media Corporation. Over the past
24   25 years I have served as a consultant and testifying expert for a variety of marketing
25   issues, and I am a co-founder of Crossfield Associates, a marketing and litigation
26   support consulting firm. During the past four years I have provided expert testimony
27   in trial or by deposition in the matters listed in Exhibit 2. My current hourly rate is

28

1  $650.  Exhibit 3 lists the materials I have obtained from counsel or other identified

2  sources.

3      3.    I understand that plaintiffs in this case assert that The Dannon Company,

4  Inc. ("Dannon"), through television commercials and various other marketing

5  materials, including package labels and its web sites, communicates to potential

6  consumers that yogurt products known as Activia, Activia Lite, DanActive an

7  DanActive Lite (the "Products") are "clinically" and "scientifically"  "proven" to

8  provide consumers with certain health benefits due to the inclusion of proprietary

9  strains of probiotic bacteria that are unique to the Products.  I understand that

10  plaintiffs further assert that there is no scientific proof of these claims, and thus that

11  these communications are deceptive.  Finally, it is my understanding that plaintiffs

12  assert that consumers have paid a price premium over other similar yogurt products in

13  order to obtain the promised health benefits, and the money-back guarantee offer

14  made by Dannon serves only to increase consumers' confidence in their erroneous

15  beliefs as to the efficacy of the Products.

16      4.    I have been asked by Counsel for plaintiffs to determine whether or not

17  the validity of these assertions could be assessed on a class-wide basis.  In what

18  follows, I describe the methods by which one could assess these assertions with

19  respect to issues related to marketing and to the promotion of the Products.

20      5.    Consumer perceptions and beliefs created by Dannon's marketing

21  communication can be assessed through standard marketing research procedures and

22  techniques, including the application of survey evidence.  The basis for a major

23  product launch by a large consumer products company for products such as Activia,

24  Activia Lite, DanActive, and DanActive Lite is typically the subject of much

25  consumer research.[1]  The appropriate target market and the product features and

26  _____

27  [1]    Aaker, David A., V. Kumar and George S. Day, *Marketing Research*, John

28  Wiley & Sons, Inc., New York (5th ed. 1995), ("Aaker, Kumar, and Day (1995)"),

benefits of interest to that group are typically researched prior to the development and final launch of a new product.  Thus, substantial consumer research may be available that would indicate the extent to which consumers would find health claims regarding intestinal health or increased immunity attractive and would be likely to motivate purchase.

6.     In this regard, I have ████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

681-96.  *See also*, *generally*, Glen Urban and John R. Hauser, *Design and Marketing of New Products* (1993 2 ed.); Kotler, Philip and Kevin Lane Keller, *Marketing Management*, Upper Saddle River, New Jersey: Pearson/Prentice-Hall (12th ed.2007). Examples of such research are often referenced in popular and industry press articles, including: "Coke Takes Swig of Argentine Drink," Wailin Wong., *Wall Street Journal. (Eastern Edition).* Nov 26, 2003; "Crest Spices Up Toothpaste War With New Tastes," Sarah Ellison, *Wall Street Journal. (Eastern Edition).* Sep. 15, 2003; "Nissan delves into truck owner psyche," Jean Halliday. *Advertising Age. (Midwest Region Edition).* Dec 1, 2003.  Vol. 74,  Issue 48.

[2]     An example of these ████████████████████████████████████████████████

[3]     DanActive ████████████████████████████████████████████████



7.    Similarly, major consumer products companies such as Dannon typically engage in research to determine the degree to which its investment in introductory advertising and other promotional activities is achieving its desired effect.[5]  Thus, substantial consumer research is likely available that would indicate the extent to which advertising and other promotional activities is effective in communicating to potential customers that the Products: (a) contain an ingredient unique to them and not found in other yogurts; (b) that there is scientific proof to support a claim of health benefits due to the Products; and (c) that the Products will, in fact, lead to the claimed health benefits.

8.    Indeed,

_____

[4]

[5]    Aaker, Kumar, and Day (1995), pp. 713-24.

[6]    U.S. research for Dannon Actimel (as DanActive is known outside of North America)

[7]

According to Plaintiffs' Amended Complaint in this matter, Activia reached "sales numbers that less than one-tenth of one percent of all new foods and beverages achieve in their first year in the marketplace." Complaint at 10.

- 4 -



9.      Should such consumer research not be already available or sufficient, standard marketing research tools and methods can be employed to assess the validity of plaintiffs' assertions.  For example, a properly conducted survey can assess the beliefs created by the names of the proprietary ingredients and the advertising and other communications regarding the purported claims of the product.  Further, survey evidence can demonstrate the overall effect of misrepresentations and whether consumers' decisions to purchase a particular product are affected by them. A survey can thereby establish a link between an alleged misrepresentation about a good or service and the decision by consumers to purchase that good or service. For instance, a properly-designed consumer survey or surveys, analyzed with standard marketing and consumer research tools, can be used to investigate all aspects of consumers' decision-making process. A survey can determine the relative importance of certain characteristics and features of the Products to consumers in the relevant target market. The greater the weight placed upon a particular characteristic, the greater the expected impact of deception about it on the ultimate purchase decision.

10.    Consumer and marketing research tools or methods, in addition to general marketing theory and research, may also be able to ascertain, for example, the validity of Plaintiffs' assertion that Dannon's offer of a money-back guarantee for the Products (*e.g.*, the "Activia Challenge" offer) serves only to increase consumers' confidence in their erroneous beliefs as to the efficacy of the Products. Money-Back Guarantees (MBGs) are often used by firms as a way to lower prospective consumers' risk, such as the risk associated with the performance of the product or service.[9] MBGs like the Activia Challenge, in which consumers are offered to buy and try Activia for 14 days and "it works or it's free," also typically serve as a way to signal consumers about the quality or promised attributes of a product or service, since it is generally perceived that it would be more costly for a firm with a low-quality product to offer such a guarantee than for a firm with a high quality product.[10]

11.    My understanding is that some of this testimony is covered by protective order.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct. Executed this 28 day of July, 2008, at Los Angeles, California.

_____
CAROL SCOTT, Ph.D.

---

[9]    *See, for example,* Amir Heiman, Bruce McWilliams, and David Zilberman: "Demonstrations and money-back guarantees: market mechanisms to reduce uncertainty," *Journal of Business Research* 54 (2001) pp. 71– 84.

[10]    *See, for example,* Sridhar Moorthy and Kannan Srinivasan: "Signaling Quality with a Money-Back Guarantee: The Role of Transaction Costs," *Marketing Science*, Vol. 14, No. 4, (1995), pp. 442-466.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 28, 2008.

s/ Thomas J. O'Reardon, II
THOMAS J. O'REARDON, II

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:  toreardon@csgrr.com

- 7 -

# Mailing Information for a Case 2:08-cv-00415-SJO-AGR

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lee Albert**
  lalbert@magergoldstein.com

- **Timothy G Blood**
  timb@csgrr.com

- **Jonathan W Cuneo**
  jonc@cuneolaw.com

- **Bruce A Friedman**
  bruce.friedman@bingham.com,donna.mcgee@bingham.com

- **Angel A Garganta**
  angel.garganta@aporter.com,cathryn.tully@aporter.com,maryanne.donaldson@aporter.com,kendr

- **Pamela Gilbert**
  pamelag@cuneolaw.com

- **Jayne A Goldstein**
  jgoldstein@magergoldstein.com

- **Leslie Hurst**
  leslieh@csgrr.com

- **Trenton H Norris**
  trent.norris@aporter.com,delicia.soza@aporter.com

- **Thomas Joseph O'Reardon , II**
  toreardon@csgrr.com

- **David Pastor**
  dpastor@gilmanpastor.com

- **Mark P Pifko**
  mark.pifko@aporter.com

- **Gina M Simas**
  gina.simas@bingham.com

- **Jonathan M Stein**
  jstein@csgrr.com,e_file_fl@csgrr.com

- **John J Stoia , Jr**
  johns@csgrr.com,e_file_sd@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Jayne A Goldstein**
Mager  and Goldstein LLP
1640 Town Center Circle Ste 216
Weston, FL 33326

- 9 -