1  Bingham McCutchen LLP
   BRUCE A. FRIEDMAN (SBN 65852)
2  bruce.friedman@bingham.com
   GINA M. SIMAS (SBN 205367)
3  gina.simas@bingham.com
   The Water Garden
4  Fourth Floor, North Tower
   1620 26th Street
5  Santa Monica, CA  90404-4060
   Telephone:  310-907-1000
6  Facsimile:  310-907-2000

7  Arnold & Porter LLP                          Arnold & Porter LLP
   ANGEL A. GARGANTA (SBN 163957)               MARK P. PIFKO (SBN 228412)
8  angel.garganta@aporter.com                   mark.pifko@aporter.com
   TRENTON H. NORRIS (SBN 164781)               CHRISTOPHER S. TARBELL (SBN 240253)
9  trent.norris@aporter.com                     christopher.tarbell@aporter.com
   90 New Montgomery, Suite 600                 777 South Figueroa Street, 44th Floor
10 San Francisco, CA 94105                      Los Angeles, CA 90017
   Telephone: (415) 356-3000                    Telephone: (213) 243-4000
11 Facsimile:  (415) 356-3099                   Facsimile:  (213) 243-4199

12 Attorneys for Defendant
   The Dannon Company, Inc.
13

14

15              UNITED STATES DISTRICT COURT

16              CENTRAL DISTRICT OF CALIFORNIA

17                   WESTERN DIVISION

18 PATRICIA WIENER and STEVEN R.      )   No. CV08-00415 SJO (AGRx); related to
   BERUBE, On Behalf of Themselves, All )   CV08-03943 SJO (AGRx)
19 Others Similarly Situated and the  )
   General Public,                     )   **MEMORANDUM IN OPPOSITION TO**
20                                     )   **PLAINTIFF'S MOTION FOR CLASS**
                  Plaintiffs,          )   **CERTIFICATION**
21                                     )
         v.                            )   Judge:  Honorable S. James Otero
22                                     )   Date:    September 22, 2008
   THE DANNON COMPANY, INC.,           )   Time:   10:00 AM
23                                     )   Ctrm:   880
                  Defendant.          )
24                                     )

25

26                   **PUBLIC REDACTED VERSION**

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................1

II.   CASE BACKGROUND AND SUMMARY OF FACTS...................................2

III.  WIENER BEARS THE BURDEN OF PROVING THAT HER
      CLASS ACTION MAY BE CERTIFIED UNDER RULE 23. .........................5

IV.   WIENER HAS NOT SATISFIED RULE 23(a)(3), TYPICALITY,
      OR RULE 23(a)(4), ADEQUACY OF REPRESENTATION .......................5

      A.   Because Wiener Purchased Only One Product, Her Claims Do
           Not Satisfy The Typicality Requirement Of Rule 23(a)(3). ..................5

      B.   For Multiple Reasons, Wiener Is Also An Inadequate Class
           Representative Under Rule 23(a)(4). ...........................................7

           1.   Wiener Lacks Standing As To DanActive...............................8

           2.   Wiener Lacks Willingness And Ability To Supervise,
                Control And Take Charge Of The Action. ...............................8

           3.   This Is Lawyer-Driven Litigation. ...................................... 10

V.    WIENER HAS ALSO FAILED TO SATISFY THE
      PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF
      RULE 23(b)(3)..........................................................................11

      A.   Here, Individual Issues, Such As Reliance And Damages,
           Predominate Over Common Issues. ............................................ 11

           1.   Separate Proof Is Needed To Establish Each Class
                Member's Reliance On Dannon's Advertising............................ 12

                a.   Not All Consumers Were Uniformly Exposed To
                     Dannon's Advertising Claims. ................................ 13

                b.   Even If They Were Exposed to the Ads, Not All
                     Purchasers Possessed The Same Knowledge And
                     Understanding. .................................................. 14

                c.   Purchasers Bought The Products For Their Own
                     Individual Reasons.............................................. 15

           2.   The Presumption Of Class-Wide Reliance Does Not
                Apply............................................................................ 16

           3.   The *Existence* Or Fact Of Damages Must Also Be
                Determined Separately For Each Individual Class
                Member. ......................................................................... 17

        a.    Some Purchasers Of Dannon's Products Received A Refund Of Their Purchase Price. .................................... 18

        b.    Purchasers Were Also Able To Buy Dannon Products At Or Near The Price Of Other Yogurts. ........... 18

   B.   Wiener's Class Action Is Unmanageable And Therefore Not Superior. ......................................................................... 19

VI.   CONCLUSION .................................................................. 20

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.,*
247 F.R.D. 156 (C.D. Cal. 2007)..................................................12

*Amchem Prod. v. Windsor,*
521 U.S. 591 (1997).........................................................5, 8, 11

*Bodner v. Oreck Direct, LLC,*
No. 06-4756, 2007 U.S. Dist. LEXIS 30408 (N.D. Cal. Apr. 25, 2007) ....10, 11

*Castano v. Am. Tobacco Co.,*
84 F.3d 734 (5th Cir. 1996) ...................................................5

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) .......................................12

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001) ....................................................9

*Chavez v. Blue Sky Natural Beverage Co.,*
503 F. Supp. 2d 1370 (N.D. Cal. 2007)....................................17, 18

*Clark v. Experian Info Solutions, Inc.,*
233 F.R.D. 508 (N.D. Ill. 2005) .............................................18

*In re Congra Peanut Butter Prods. Liab. Litig.,*
No. 1:07-MD-1845, 2008 WL 2885951 (N.D. Ga. July 22, 2008)................18

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)..........................................................19

*Endres v. Wells Fargo Bank,*
No. 06-7019, 2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008)..............6

*Gartin v. S&M NuTec LLC,*
245 F.R.D. 429 (C.D. Cal. 2007).............................................13

*Gen. Tel. Co. of the Sw. v. Falcon,*
457 U.S. 147 (1982)...........................................................5

*Gonzalez v. Proctor & Gamble Co.,*
247 F.R.D. 616 (S.D. Cal. 2007) .........................................5, 6, 13

*In re Graphics Processing Units Antitrust Litig.,*
No. 06-07417, 2008 WL 2788089 (N.D. Cal. July 18, 2008).........................12

*Gross v. Summa Four, Inc.,*
93 F.3d 987 (1st Cir. 1996).....................................................8

*In re HP Inkjet Printer Litigation,*
No. 05-3580, 2008 U.S. Dist. LEXIS 56979 (N.D. Cal. July 25, 2008)...........12

- iii -

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 7

*Hanon v. Dataproducts Corp.,*
   976 F.2d 497 (9th Cir. 1992) ................................................................... 5

*In re Initial Pub. Offering Sec. Litig.,*
   471 F.3d 24 (2nd Cir. 2006) ................................................................... 5

*Jiminez v. Domino's Pizza, Inc.,*
   238 F.R.D. 241 (C.D. Cal. 2006) ........................................................... 12

*Kaczmarek v. IBM,*
   186 F.R.D. 307 (S.D.N.Y. 1999) ............................................................. 6

*Koenig v. Benson,*
   117 F.R.D. 330 (E.D.N.Y. 1987) ............................................................. 9

*Lewis v. Casey,*
   518 U.S. 343 (1996) .............................................................................. 8

*Lewis Tree Serv., Inc. v. Lucent Tech. Inc.,*
   211 F.R.D. 228 (S.D.N.Y. 2002) ....................................................... 6, 7

*In re Live Concert Antitrust Litig.,*
   247 F.R.D. 98 (C.D. Cal. 2007) ........................................................... 17

*Lozano v. AT&T Wireless Servs. Inc.,*
   504 F.3d 718 (9th Cir. 2007) ......................................................... 11, 17

*Ludke v. Philip Morris, Inc.,*
   No. 00-1954, 2001 WL 1673791 (Minn. Dist. Ct. Nov. 21, 2001) .................. 19

*Martin v. Dahlberg, Inc.,*
   156 F.R.D. 207 (N.D. Cal. 1994) ........................................................... 11

*In re PPA Prods. Liab. Litig.,*
   214 F.R.D. 614 (W.D. Wa. 2003) ..................................................... 17, 19

*Poulos v. Caesars World, Inc.,*
   379 F.3d 654 (9th Cir. 2004) ............................................................... 13

*In re Quintus Sec. Litig.,*
   201 F.R.D. 475 (N.D. Cal. 2001) ........................................................... 8

*Rodarte v. Phillip Morris, Inc.,*
   No. 03-0353, 2003 U.S. Dist. LEXIS 25067 (C.D. Cal. June 23, 2003) .......... 17

*Rosentstein v. CPC Int'l, Inc.,*
   No. 90-4970, 1991 U.S. Dist. LEXIS 200 (E.D. Pa. Jan. 8, 1991) .................. 17

*Schwartz v. The Upper Deck Co.,*
   183 F.R.D. 672 (S.D. Cal. 1999) ............................................................ 5

*True v. Am. Honda Motor Co., Inc.,*
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ................................................. 12

- iv -

*Welling v. Alexy,*
    155 F.R.D. 654 (N.D. Cal 1994) ...................................................... 10

*Williams v. Balcor Pension Investors,*
    150 F.R.D. 109 (N.D. Ill. 1993) ....................................................... 9

*Zinser v. Accufix Research Instit., Inc.,*
    253 F.3d 1180 (9th Cir. 2000) .......................................................... 5

## STATE CASES

*Akkerman v. Mecta Corp., Inc.,*
    152 Cal. App. 4th 1094 (2007) ....................................................... 13

*Allen v. IBM Corporation,*
    2002 WL 31898317 (Cal. Ct. App. Dec. 31, 2002) ..................... 16, 17

*Buckland v. Threshold Enter., Ltd.,*
    155 Cal. App. 4th 798 (2007) .......................................................... 8

*Caro v. Proctor & Gamble Co.,*
    18 Cal. App. 4th 644 (1993) ....................................................... 13, 17

*Hazlehurst v. Brita Prod. Co.,*
    295 A.D.2d 240 (N.Y. App. Div. 2002) .......................................... 13

*Meachum v. Outdoor World Corp.,*
    654 N.Y.S.2d 240 (1996) ............................................................... 10

*Medrazo v. Honda of No. Hollywood,*
    -- Cal.Rptr.3d --, 2008 WL 2896101
    (Cal.App. 2 Dist. July 29, 2008) ...................................................... 7

*Nat'l Solar Equip. Owners' Ass'n, Inc. v. Grumman Corp.,*
    235 Cal. App. 3d 1273 (1991) ........................................................ 16

*In re Tobacco II Cases,*
    51 Cal. Rptr. 3d 707 (2006) ............................................................ 12

*Vasquez v. Superior Court,*
    4 Cal. 3d 800 (1971) ...................................................................... 16

## STATUTES AND RULES

Cal. Bus. & Prof. Code § 17200 ......................................................... 12

Fed. R. Civ. P. 23 ..................................................................... passim

## OTHER AUTHORITIES

7AA Wright, Miller & Kane, *Federal Practice and Procedure: Civil*
    § 1782 (3d ed. 2005)...................................................................... 11

- v -

## I.    INTRODUCTION

In her motion for class certification, Plaintiff Patricia Wiener oversimplifies a complex set of facts. But when one actually considers the issues to be presented at trial, it is clear this case is not suitable for class treatment. Claiming in her First Amended Complaint ("FAC") that "Dannon has conveyed one message," Wiener mischaracterizes the different claims Dannon makes in connection with two entirely separate Products, Activia (a yogurt) and DanActive (a drink), the second of which she admits she has never even purchased or used. Wiener also overlooks the fact that Dannon's advertising messages are only a part of a broad range of individualized reasons why consumers purchase the Products. In fact, many consumers purchase the Products for reasons having nothing to do with Dannon's advertising, and not all purchasers have the same knowledge and understanding at the time of purchase. Evaluating such individualized facts on a class-wide basis is not consistent with the requirements of Rule 23.

Furthermore, Wiener is not suited to represent a class of all purchasers of the Products. She has not shown that, as the class representative, she has the willingness or interest in performing the required supervision of the litigation. She has failed to take an active role thus far, and there is no reason to believe that when important decisions affecting the potential class are at stake, Wiener will limit her counsel's discretion to prosecute this case in furtherance of their own motives. On the contrary, this is a classic example of lawyer-driven litigation. Plaintiff's counsel was investigating the Products before Wiener was even involved and it was Plaintiff's counsel's idea to file a lawsuit.

A class action is not a substantive remedy, it is a procedural device to be used under a limited set of circumstances. A court should only certify a class if the issues among the class members are so unified that the litigation can be fairly evaluated based solely on the named representative's evidence. Here it cannot.

- 1 -

1    In addition to requiring analysis of the variety of personal consumer
2  motivations, to try this case as a class action would require evaluation of the price
3  each potential class member paid for the product.  The statutes under which Wiener's
4  claims are based require injury in fact and loss of money or property, so this highly-
5  individualized analysis not only relates to damages, but also standing.  Each store sets
6  its own price, independent of Dannon, and many consumers may also have used
7  Dannon-issued discount coupons.  In short, trial in this case would involve many
8  layers of individualized proof and defenses and would simply be unmanageable.
9  Accordingly, because certifying a class under these circumstances would not further
10 the purposes of Rule 23, Wiener's motion should be denied.

11 **II.    CASE BACKGROUND AND SUMMARY OF FACTS**

12   This dispute arises from Wiener's allegation that the Products at issue, Activia
13 and DanActive, are being deceptively marketed to consumers without "sufficient
14 testing or adequate substantiation."  *See* Wiener FAC, ¶ 26.  Mischaracterizing
15 Dannon's claims and substantiation for the Products, Wiener alleges she "purchased
16 *some of the Products* in reliance on [Dannon's] claims, and suffered injury in fact and
17 lost money as a result of" the alleged violations.  Wiener FAC, ¶ 13 (emphasis
18 added).  She does not allege the Products were in any way unfit for consumption, but
19 instead seeks return of the marginal cost consumers paid for the Products compared
20 to other yogurt products.  *See id.*, ¶¶ 11, 12.

21   Should this case ever be tried, Dannon will show that the Products are the
22 result of years of research and development and their benefits are strongly supported
23 by a robust body of scientific evidence.

24   Activia is a lowfat probiotic yogurt product with active cultures, including
25 *Bifidobacterium animalis* DN-173 010, a patented probiotic strain identified on
26 Activia's product label with the more consumer-friendly trademarked name, *Bifidus*
27 *Regularis*.  Declaration of Marc Jove ("Jove Decl."), ¶ 2.  Benefit claims for Activia
28 include "Activia with Bifidus Regularis is scientifically proven to help regulate the

- 2 -

1   digestive system by helping with slow intestinal transit when eaten daily for two

2   weeks, as part of a balanced diet and healthy lifestyle." *Id.*, ¶ 3.

3         DanActive is a fermented drinkable dairy product with the lactic ferment strain,

4   *Lactobacillus casei* DN-114 001, or *L. casei Immunitas*, another consumer-friendly

5   trade name. *Id.*, ¶ 5. The benefit claims for DanActive include "DanActive is

6   clinically proven to help strengthen your body's defenses." *Id.*, ¶6.

7         All of Dannon's claims are substantiated by published scientific studies.

8   Declaration of Miguel Freitas, Ph. D. ("Freitas Decl."), ¶ 5. The benefit claims for

9   Activia are supported by approximately 12 clinical studies. *Id.*, ¶ 3.

10

11

12                                    DanActive also has a wealth of scientific support for

13  the claim that it is clinically proven to help strengthen the body's natural defenses.

14  Freitas Decl., ¶ 4. The benefit claims for DanActive are supported by approximately

15  21 clinical studies. *Id.* Copies of the studies on Activia and DanActive are attached

16  as Exhibits A and B to Dr. Freitas' declaration.

17        Dannon does not sell the Products directly to consumers. Jove Decl., ¶ 7. The

18  Products are sold to consumers exclusively through retailers. *Id.*, ¶ 8. Although

19  Dannon issues manufacturer's discount coupons, the pricing decisions for the

20  Products are made by the retailers. *Id.*, ¶ 9. As defined by Wiener in the

21  Certification Motion,

22

23                                    .

24        To better understand its customers and how they perceive its Products, Dannon

25  conducts consumer research. Declaration of Brian Walsh ("Walsh Decl."), ¶¶ 3, 4.

26  Dannon's consumer research shows people learn about the Products through different

27  means, purchase them for different reasons, and have different understandings and

28  knowledge at the time of purchase. *Id.*, ¶ 5. Dannon also retained a consumer survey

                                        - 3 -

1    expert for purposes of this litigation, and like Dannon's other consumer research, his

2    survey of California consumers shows there are a number of personalized factors that

3    are involved in each consumer's decision to purchase the Products.  Declaration of

4    Gabriel Gelb ("Gelb Decl."), ¶ 3.  Sale pricing, coupons and free samples—not the

5    advertised benefit claims that the Products are "clinically proven" challenged by

6    Wiener—were the number one reason for purchasing the Products.  *Id.*, ¶ 4.

7        Similarly, during her deposition, Wiener's testimony provided numerous

8    examples of the unique, individualized issues presented in this case.  *See* Exhibit 1 to

9    the Declaration of Mark P. Pifko, Deposition Transcript of Patricia Wiener ("Wiener

10   Depo.").  Most importantly, although she purports to represent purchasers of both

11   Products, Wiener never purchased or used DanActive.  *Id.*, 43:17-18; 44:14-16.

12       Wiener's loyalty to the Dannon name, derived from her unique, personal prior

13   experiences with other Dannon products, was among the reasons she gave for her

14   single purchase of Activia.  *Id.*, 80:16 - 81:23.  Wiener also stated she did not take

15   advantage of the "Activia Challenge"—a money back guarantee—at the time of her

16   Activia purchase.  *Id.*, 109:7-111:17.

17       Consistent with the lawyer-driven nature of this litigation, Wiener has little

18   understanding of the facts or familiarity with the proceedings and it was her counsel's

19   idea to file this lawsuit.  *Id.*, 33:9-22, 44:2-4; 94:10-13, 98:5-22.  Wiener cannot even

20   recall reading the complaint before it was filed.  *Id.*, 129:20-21.  Indeed, when

21   questioned why Steven Berube was added as a plaintiff, she answered, "I don't know

22   all the exact details," nor did she bother to ask why he is being dismissed.  *Id.*, 28:22-

23   29:2, 132:8-11.  Wiener also did not understand, and could not even describe, the

24   retainer agreement she entered into with her counsel.  *Id.*, 47:18-49:11.  Wiener also

25   lacks interest, control or knowledge regarding her discovery obligations; she admitted

26   to having documents (*Id.*, 154:22-24), but did not search for them for purposes of

27   responding to discovery (*Id.*, 154:10-15).  Finally, even when her counsel participated

28   in a mediation, Wiener did not attend.  *Id.*, 144:18-19.

### III.   WIENER BEARS THE BURDEN OF PROVING THAT HER CLASS ACTION MAY BE CERTIFIED UNDER RULE 23.

Before a class action may be certified, the plaintiff bears the burden of showing that each of the requirements of Federal Rule 23 is satisfied.  This burden is not easily met.  *See Schwartz v. The Upper Deck Co.*, 183 F.R.D. 672, 675 (S.D. Cal. 1999).  To justify certification, a plaintiff must offer more than conclusory allegations that Rule 23 has been satisfied.  *Id*. at 681.  Instead, she must come forward with "enough evidence, by affidavit, document, or testimony, to . . . [satisfy] each Rule 23 requirement."  *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2nd Cir. 2006).

The court, in turn, must undertake a "rigorous analysis."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  It may review all the evidence bearing on the Rule 23 requirements, even if it would also go to the merits.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992).  This intense scrutiny of the actual evidence is needed to make a meaningful assessment of the Rule 23 requirements.  *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996).

Under these standards, Wiener has not satisfied either Rule 23(a) or 23(b).

### IV.   WIENER HAS NOT SATISFIED RULE 23(a)(3), TYPICALITY, OR RULE 23(a)(4), ADEQUACY OF REPRESENTATION

An alleged class action may not be certified until the four threshold requirements of Rule 23(a) are satisfied.  *Zinser v. Accufix Research Instit., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2000).  The four requirements are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *Amchem Prod. v. Windsor*, 521 U.S. 591, 613 (1997).  Where the plaintiff cannot meet one of these requirements, as is the case here, the class cannot be certified.  *See, e.g., Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 621-22 (S.D. Cal. 2007).

#### A.   Because Wiener Purchased Only One Product, Her Claims Do Not Satisfy The Typicality Requirement Of Rule 23(a)(3).

To satisfy the typicality requirement, the plaintiff must demonstrate that her

- 5 -

1   "claims or defenses . . . are typical of the claims or defenses of the class." Rule

2   23(a)(3).  In the Ninth Circuit, this means the plaintiff must share similar injuries and

3   have been exposed to "*the same course of conduct*" as the absent class members.

4   *Endres v. Wells Fargo Bank*, No. 06-7019, 2008 U.S. Dist. LEXIS 12159, at *11

5   (N.D. Cal. Feb. 6, 2008) (emphasis added).

6        Courts have found the typicality requirement lacking where a single plaintiff

7   seeks to represent a class comprised of individuals who purchased multiple products.

8   *See, e.g., Gonzalez*, 247 F.R.D. at 622.  In such cases, courts have found the plaintiff

9   cannot show she was exposed to "the same course of conduct" as the class.  *See id.*

10  The reason: different products are often purchased under different circumstances and

11  involve widely disparate facts.  *See Lewis Tree Serv., Inc. v. Lucent Tech. Inc.*, 211

12  F.R.D. 228, 233-34 (S.D.N.Y. 2002); *Kaczmarek v. IBM*, 186 F.R.D. 307, 312-313

13  (S.D.N.Y. 1999).  When such differences arise, the plaintiff's claims are not typical.

14       As in the cases cited above, Wiener seeks to represent a class of all Activia

15  and DanActive purchasers when she only bought Activia.  The problem with this

16  approach is the course of conduct associated with Activia is different than that for

17  DanActive.  First, Activia and DanActive involve different product claims (Jove

18  Dec., ¶ 15); the former addresses improving digestive health by helping with slow

19  transit time, (*Id.*, ¶ 3.), while the latter concerns strengthening the body's defenses.

20  *Id.*, ¶ 6.  Second, the studies used to support the product claims are also different; at

21  a minimum, they differ by number of subjects, age of subjects, and clinical

22  endpoints relevant to the claimed benefit.  Freitas Decl., ¶ 5.  Thus, the evidence that

23  will be used to support (and defend against) Wiener's claims about Activia will be

24  different than what will used to support (and defend against) her claims about

25  DanActive.  Third, the advertising associated with the Products is different.  The

26  differences span the development and creation of the advertising, as well as all the

27

28

- 6 -

1   final advertising processes.  Jove Decl., ¶ 15.  Given these differences, it cannot be

2   said that Wiener's claims are typical of the class.[1]

3         Wiener argues her claims are typical because they, as well as each absent class

4   members' claims, arise from Dannon's advertising, which, for both Products,

5   encompasses the term "clinically proven."  Pl.'s Mot. for Certification ("Certif.

6   Mot."), at 15.  The mere use of the term "clinically proven," however,  does not mean

7   that the ads are the same.  Wiener has merely generalized the conduct at issue to the

8   point where all critical variations drop out and her claims appear typical.  *See Lewis*

9   *Tree Serv.*, 211 F.R.D. at 232 ("Lewis Tree cannot create a common factual predicate

10  for the class . . . by stating, in the most general terms, that all cases involved [the

11  allegedly unlawful conduct.]").  In truth, the course of conduct associated with

12  Activia is different than that for DanActive.  *See supra*.  Moreover, ████████████

13  ███████████████████  recent California survey, show that whether the Product

14  benefit claims are "clinically" or "scientifically"  proven is not a very significant

15  motivation for purchasing either of the Products.  ████████████; Gelb Decl. ¶¶ 4, 5.

16  **B.    For Multiple Reasons, Wiener Is Also An Inadequate Class**
17  **       Representative Under Rule 23(a)(4).**

18        Rule 23(a)(4) requires that "the representative parties . . . fairly and adequately

19  protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To be adequate, the

20  named plaintiff and her counsel must (1) have no conflicts of interest with other class

21  members and (2) the court must conclude she will "prosecute the action vigorously

22  on behalf of the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

23  1998).  Plaintiff has not met her burden on either prong.

24

_____

25  [1] This is a very different case from *Medrazo v. Honda of No. Hollywood*, --
    Cal.Rptr.3d --, 2008 WL 2896101 (Cal.App. 2 Dist. July 29, 2008), where the
26  plaintiff's claims, though covering three brands of motorcycles, challenged solely a
    retail dealer's alleged class-wide failure to attach statutorily-required "hanger tags" to
27  all the motorcycles it sold.  Unlike this case, *Medrazo* had nothing to do with
    different product benefit claims, different advertisements, or different consumer
28  reasons for purchasing the different products.

**1.     Wiener Lacks Standing As To DanActive.**

The Supreme Court has repeatedly held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[2] *Amchem*, 521 U.S. at 625-26.

Wiener admits that she did not purchase or consume DanActive during the proposed class period.  Wiener Depo., 43:17-18 ("Q  Okay.  Did you purchase or use DanActive? A  No.").  A party "cannot maintain an action on behalf of class members to redress an injury for which [one] has no standing in [one's] own right." *Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir. 1996) (citations omitted).  To have standing for claims based on alleged fraudulent misrepresentations brought under the UCL and CLRA, a plaintiff must believe in the relevant representations, and *act* upon this belief. *Buckland v. Threshold Enter., Ltd.*, 155 Cal. App. 4th 798, 809-819 (2007); *see also* n. 1, *supra*.  Having not purchased DanActive, Wiener certainly did not act upon any belief about DanActive.  Thus, Wiener has not suffered any injury in fact. *See Amchem*, 521 U.S. at 625-26.  Accordingly, Wiener has no standing to assert the claims alleged about DanActive.

**2.     Wiener Lacks Willingness And Ability To Supervise, Control And Take Charge Of The Action.**

Wiener also fails to fairly and adequately represent the interests of the class because, rather than actively supervising and taking charge of the action, she has allowed the litigation to be driven entirely by her attorneys.  "A proposed lead plaintiff can best demonstrate the willingness and ability to discharge [her] fiduciary duties . . . by demonstrating the willingness and ability to take charge of the litigation and negotiate a reasonable representation arrangement with class counsel." *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001).

---

[2] Plaintiff bears the burden of proving standing. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

- 8 -

1   "One of the best ways for a court to ensure that [a plaintiff] will fairly and
2   adequately represent the interests of the class is to inquire whether the movant has
3   demonstrated a willingness and ability to select competent class counsel and to
4   negotiate a reasonable retainer agreement with that counsel." *In re Cendant Corp.*
5   *Litig.*, 264 F.3d 201, 264 (3d Cir. 2001).  Wiener has little understanding of the
6   retainer agreement, and she did not "negotiate" it.  Wiener Depo., 47:18-49:11.

7   Indeed, Wiener's lack of knowledge and control goes even further.  Wiener
8   cannot even recall reading the complaint before it was filed.  *Id.*, 129:20-21.  At a
9   minimum, class representatives are expected to review the complaint before it is filed.
10  *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 118 (N.D. Ill. 1993); *Koenig v.*
11  *Benson*, 117 F.R.D. 330, 337 (E.D.N.Y. 1987).  When questioned why Steven Berube
12  was added as a plaintiff, she answered, "I don't know all the exact details" (Wiener
13  Depo., 132:8-11), nor did she bother to ask why he was being dismissed (*Id.*, 28:22-
14  29:2).  Additionally, it is unclear whether Wiener even understands the composition
15  of the class she purports to represent.  *Compare id.*, 126:22-25 (indicating she
16  believes the class does not include people who think Activia is a good product and
17  that it worked for them) *with id.*, 127:11-22 (indicating she is representing all
18  purchasers of the Products).

19  Wiener also lacks interest, control, or knowledge regarding her discovery
20  responses.  Among other things, she did not search for any documents in connection
21  with Dannon's document requests.  *Id.*, 154:10-15.  But when questioned by
22  Dannon's counsel, Wiener admitted that she has documents responsive to the
23  requests.  *Id.*, 154:22-24.  Finally, even when the Parties conducted a mediation,
24  Wiener did not bother attending.  *Id.*, 144:18-19.

25  Wiener's conduct over the last eight months shows she is unwilling to
26  meaningfully supervise or monitor this litigation.  She apparently relies on counsel to
27
28

- 9 -

1    make nearly every decision in the case and has a remarkable lack of involvement in

2    the action.[3]  For this reason as well, this Court should deny Plaintiffs' Motion.

3                    **3.        This Is Lawyer-Driven Litigation.**

4           Besides demonstrating a willingness to take charge of the litigation, the

5    representative must understand the facts of the case and stay familiar with the

6    proceedings. *Bodner v. Oreck Direct, LLC*, No. 06-4756, 2007 U.S. Dist. LEXIS

7    30408, *5 (N.D. Cal. Apr. 25, 2007). "Courts have held that a class representative

8    who is unfamiliar with the case will not serve the necessary role of 'checking the

9    otherwise unfettered discretion of counsel in prosecuting the suit.'" *Welling v. Alexy*,

10   155 F.R.D. 654, 659 (N.D. Cal 1994).

11          Wiener's testimony makes it clear this is lawyer-driven litigation.  Wiener

12   Depo., 44:2-4 ("Q . . . Was it your idea or your counsel's idea to file a lawsuit about

13   DanActive?  A  My counsel's."); *id.,* 98:5-22 ("Q  Before you retained Ms. Goldstein

14   as your attorney, did she tell you that she was considering the possibility of a Class

15   Action lawsuit against The Dannon Company over Activia?  A  Yes."); *see also id.,*

16   33:9-22 ("Q  You said before you met with Ms. Goldstein you hadn't considered

17   bringing a lawsuit; right?  A  Right."); *id.*, 94:10-13 ("Q . . . Were you the one that

18   raised Activia with Ms. Goldstein, or did she raise it with you?  A  I did not raise

19   it.").  In the class context, lawyer-driven litigation may lead to denying certification.

20          "Solicitation of clients for the commencement or continuation of a class action

21   is improper, sufficient to warrant denial of class action certification." *Meachum v.*

22   *Outdoor World Corp.*, 654 N.Y.S.2d 240, 251 (1996).  When "[i]t is clear from the

23   record that plaintiff's counsel, and not plaintiff, is the driving force behind this action.

24   . . . [s]uch a 'cart before the horse' approach to litigation is not the proper mechanism

25   for the vindication of legal rights." *Bodner*, 2007 U.S. Dist. LEXIS 30408, at *5-6.

26   Like Wiener's counsel, in *Bodner*, the attorneys "had the research performed on the

27   _____

     [3] *See, e.g.,* Wiener Depo., 121:21-24; *id.*, 130:14-16; *id.*, 145:13-16; *id.*, 151:18-23;
28   *id.*, 159:20-23

product at issue and had a theory about the product's deficiencies." *Id.* at *7. Having little knowledge of the litigation and not even having purchased DanActive, Wiener is a similar plaintiff to Bodner. "To grant class certification in such circumstances would be to place this court's imprimatur on litigation practices which it finds abhorrent and inconsistent with the standards of federal class action suits." *Id.*

Like *Bodner*, this action is essentially driven by counsel. Wiener stated it was Plaintiff's counsel's idea to file a lawsuit about DanActive. Wiener Depo., 44:2-4. It was also Plaintiff's counsel who was "investigating the claims Activia makes" before Wiener was even involved. *Id.*, 98:5-22. This Court should not participate in counsel's scheme and should deny certification.

## V.  WIENER HAS ALSO FAILED TO SATISFY THE PREDOMINANCE AND SUPERIORITY REQUIREMENTS OF RULE 23(b)(3).

As with Rule 23(a), an alleged class may not be certified until the plaintiff has proven it falls within one of the categories enumerated in Rule 23(b). *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 724 (9th Cir. 2007). The most commonly alleged category, and the one at issue here, is found in Rule 23(b)(3). 7AA Wright, Miller & Kane, *Fed. Prac. & Proc.: Civil* § 1782 (3d ed. 2005). To prove an alleged class falls within Rule 23 (b)(3), two requirements must be satisfied. First, "[c]ommon questions must 'predominate over any questions affecting only individual members.'" *Amchem*, 521 U.S. at 615. Second, "class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Id.* Where either is not met, class certification should be denied.

### A.  Here, Individual Issues, Such As Reliance And Damages, Predominate Over Common Issues.

To establish predominance, the plaintiff must prove common issues for the central part of the case. *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 214 (N.D. Cal. 1994). This involves a two-step process. First, the plaintiff must identify the substantive issues raised by the claims *and defenses* in the case. Second, the plaintiff

- 11 -

1    must show each of these issues is susceptible to common proof and class adjudication.

2    *See Jiminez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006).

3          In this context, once again, Wiener fails to meet her burden.  To support her

4    predominance argument Wiener offers little more than the conclusory allegation that

5    this case involves Dannon's advertising.  *See* Certif. Mot., at 16.  That is not enough.

6    An analysis of *all* the critical issues shows many require highly individualized proof

7    and are not amenable to class adjudication.[4]

8          **1.    Separate Proof Is Needed To Establish Each Class Member's**

9              **Reliance On Dannon's Advertising.**

10         It is undisputed that each of Wiener's claims requires proof of reliance.  *See*

11   Certif. Mot., at 17; *see also True v. Am. Honda Motor Corp., Inc.*, 520 F. Supp. 2d

12   1175, 1182 (C.D. Cal. 2007) (UCL)[5]; *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d

13   939, 946 (S.D. Cal. 2007) (CLRA); *In re HP Inkjet Printer Litigation*, No. 05-3580,

14   2008 U.S. Dist. LEXIS 56979, at *11-12 (N.D. Cal. July 25, 2008) (express

15   warranty).  Reliance is not an issue that is normally amenable to class-wide proof.

16   _____

     [4] To meet her burden of showing this case can be resolved by common proof, Wiener

17   offers the declaration of Carol A. Scott, a professor in marketing.  *See* Scott. Decl. ¶
     1-4. ████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████

19   Scott's declaration, however, is simply not enough.  First, courts may be reluctant to
     find persuasive expert opinions which merely provide theoretical models for showing

20   class-wide impact.  *Cf. In re Graphics Processing Units Antitrust Litig.*, No. 06-
     07417, 2008 WL 2788089 (N.D. Cal. July 18, 2008).  Second, and more importantly,

21   ████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████.  *See Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*,
     247 F.R.D. 156, 158, 166 (C.D. Cal. 2007) (denying class cert where expert's opinion

24   on class-wide impact was not based on sufficiently meaningful analysis); *see also*
     Gelb Decl. ¶ 7.

25   [5] Dannon recognizes whether each separate member of a class action under Cal. Bus.
     & Prof. Code § 17200 must plead and prove reliance and injury in fact is currently

26   pending before the California Supreme Court.  *E.g. In re Tobacco II Cases*, 51 Cal.
     Rptr. 3d 707 (2006).  Nevertheless, this fact has not stopped district courts from

27   following the wealth of existing authority currently declaring that both reliance and
     damages are required.  *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 948-

28   49 (S.D. Cal. 2007).

1    The reason is clear: whether and why someone relies is unique to each individual.

2    *See, e.g., Caro v. Proctor & Gamble Co.,* 18 Cal. App. 4th 644, 667-68 (1993).

3    Rather than common proof then, reliance often requires individualized evidence; and

4    thus predominance cannot be found. *E.g., Gonzalez,* 247 F.R.D. at 622-26.

5         This was the exact case, for example, in *Hazlehurst v. Brita Prod. Co.,* 295

6    A.D.2d 240 (N.Y. App. Div. 2002). There, plaintiff filed a class action again Brita,

7    alleging the company's advertising uniformly misrepresented the number of gallons

8    its water filter could purify. *Id.* at 241. Plaintiff moved to certify a class of all filter

9    purchasers. *Id.* The court denied the motion noting that reliance on Brita's ads was

10   an element of nearly every claim. *Id.* at 241-42. This element, the court found,

11   would depend on separate proof from each class member because purchasers of

12   Brita's filter had, among other things, varying reasons for buying the product and

13   different understandings of the ads. *See id.* at 242. Because reliance would have to

14   be tried separately, predominance could not be satisfied. *Id.*

15        Importantly, the result reached in *Hazlehurst* is consistent with authority, both

16   in and out of the Ninth Circuit, holding that if actual reliance must be shown, it is

17   often individual, not common issues, which predominate. *E.g., Poulos v. Caesars*

18   *World, Inc.,* 379 F.3d 654, 664-66 (9th Cir. 2004); *Gartin v. S&M NuTec LLC*, 245

19   F.R.D. 429, 437 (C.D. Cal. 2007); *Akkerman v. Mecta Corp.*, 152 Cal. App. 4th 1094,

20   1102-03 (2007); *Caro,* 18 Cal. App. 4th at 667-68.

21        Here, reliance is an essential element of Wiener's claims. *See supra.* The

22   record shows that this issue is unique to each class member, and therefore not

23   amenable to common proof. In light of *Hazlehurst* and the other existing authority

24   then, the Court should also find predominance lacking and deny certification.

25                    a.    **Not All Consumers Were Uniformly Exposed To**
                          **Dannon's Advertising Claims.**
26

27        To begin with, the evidentiary record suggests not all consumers were led to

28   purchase Activia or DanActive through Dannon's advertising. Instead, the record

- 13 -

shows consumers are exposed to the Products through a variety of channels.  *See*
Walsh Decl., ¶ 5;[6] Gelb Decl. ¶ 16.  In the case of Activia, for example, █████████

██████████████████████████████████████████████████████

███████████████████████████████;[7] Gelb Decl., ¶ 16.  The same goes for

DanActive. ████████████████; Gelb Decl. ¶ 16.[8]  In the context of these personal

channels, there is no way to tell what was conveyed about the Products, especially

whether the allegedly deceptive claims were repeated.  Accordingly, to resolve the

reliance issue for each class member, the Court will need to determine at trial what

channel led to the purchase and what message was conveyed.

> **b.  Even If They Were Exposed to the Ads, Not All Purchasers Possessed The Same Knowledge And Understanding.**

The record here also shows that not all purchasers of Activia and DanActive

possessed the same knowledge and understanding at the time of purchase.  Indeed,

the evidence suggests quite the opposite.  Consumers may or may not have been

aware of probiotics before they made a purchase and may or may not have known

how they worked.  *See* Wiener Depo., 111:25-115:25.  At the same time, ████████

████████████████████████████████████████████████████████

██████████████████████████.[9]  Wiener, for instance, was a

regular yogurt eater prior to purchasing Activia.  Wiener Depo., 116:7-117:23.

Additionally, purchasers may or may not have visited the Activia or DanActive

websites prior to purchase and read the available literature.  As a result, ███████

---

[6] ████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████

[7] ██████████████████████████████████████████████████████████████████

[8] ████████████████████████████████████████████████████████████████████

[9] ████████████████████████████████████████████████████████
█████████████████████████████████████████

- 14 -

[redacted].[10]   Because the level of knowledge and understanding is likely to vary, and because such variance will be critical to assessing whether there was actual reliance, the claims and defenses in this case are not subject to common proof.

### c.   Purchasers Bought The Products For Their Own Individual Reasons.

Finally, and perhaps most importantly, the evidence shows that ultimately not all consumers purchased Activia and DanActive for the same reason.  To the contrary, [redacted];[11] Gelb Decl., ¶ 16. [redacted];[12] Gelb Decl., ¶¶ 4-5, 16.  Indeed Wiener herself admitted that her prior experiences with other Dannon products and the Dannon name affected her purchase.  Wiener Depo., 80:16-20.  In the most recent study, moreover, the factor that most led purchasers to buy Activia and DanActive was coupons or sale price.  Gelb Decl. ¶ 4.  Not a single purchaser even mentioned that the Products benefits were "clinically" or "scientifically" proven.  *See id.*, ¶¶ 5, 16.  Indeed, [redacted]

---

[10] [redacted]

[11] [redacted]

[12] [redacted].

1     ██████████. Given this evidence, the Court at trial would need to assess reliance

2     for each individual class member.

3          **2.     The Presumption Of Class-Wide Reliance Does Not Apply.**

4          Wiener makes a point to argue that in this case proof of reliance by each class

5     member is not required. Certif. Mot., at 17. She argues this case involves "a uniform

6     message" and thus reliance may be presumed. *Id.* This simply is not so.

7          The presumption of class-wide reliance only applies if the plaintiff has shown

8     the same *material* misrepresentation was made to each class member who thereafter

9     took action consistent with the misrepresentation. *Nat'l Solar Equip. Owners' Ass'n,*

10    *Inc. v. Grumman Corp.*, 235 Cal. App. 3d 1273, 1283 (1991). Where the plaintiff

11    does not meet this standard, or where the defendants shows it cannot be met, the

12    presumption does not apply. *See Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 814 (1971).

13         In *Allen v. IBM Corp.*, No. G029258, 2002 WL 31898317 (Cal. Ct. App. Dec.

14    31, 2002), for example, plaintiffs moved to certify a class against IBM alleging the

15    company made misrepresentations inducing them to join an online mall. *Id.* at *2-4.

16    Believing that reliance would be hard to prove, plaintiffs invoked the presumption.

17    *Id.* at *7. On appeal, the court held the presumption did not apply, finding, among

18    other things, IBM had rebutted materiality. *Id.* at *7-8. The court noted a statement

19    was material only if "without [it], the plaintiff would not have acted as he did." *Id.* at

20    *7. IBM's evidence showed numerous reasons why members acted and plaintiffs

21    offered nothing to show that without the statements class members would not have

22    joined the mall. *Id.* at *7-8. Thus, no presumption applied. *Id.* at *8.

23         Here the Court should similarly find the presumption does not apply. Like

24    IBM, Dannon has offered evidence rebutting materiality. According to ████████

25    ████████████████████████████████████████████████

26    ████████████████████████████████████████████████

27

28

1 ███████████████████████;[13] Gelb Decl., ¶ 4-5, 16.  Again, the most recent

2 study shows that for both Activia and DanActive purchasers it was coupons or sale

3 price which first led them to buy the Products.  Gelb Decl., ¶ 4.  Not a single

4 purchaser mentioned they bought the Products because they were "clinically proven."

5 *See id.*, ¶¶ 5, 16  Given these facts, it is unreasonable to assume consumers would not

6 have bought the Products without Dannon's allegedly deceptive claims, and thus the

7 presumption should not apply.  *See Allen*, 2002 WL 31898317, at *7 (stating the

8 presumption has been applied where "the materiality of the defendant's

9 misrepresentations was obvious").

10
11
### 3. The *Existence* Or Fact Of Damages Must Also Be Determined Separately For Each Individual Class Member.

12 Another issue central to all three of Wiener's claims is the *existence* of

13 damages.  *Lozano,* 504 F.3d at 731-32 (UCL); *Chavez v. Blue Sky Natural Beverage*

14 *Co.*, 503 F. Supp. 2d 1370, 1373 (N.D. Cal. 2007) (CLRA); *Rodarte v. Phillip Morris*

15 *Inc.*, No. 03-0353, 2003 U.S. Dist. LEXIS 25067, at *7 (C.D. Cal. June 23, 2003)

16 (express warranty).  Damages are an issue which often demand separate, not common

17 proof.  *See, e.g. Caro*, 18 Cal. App. 4th at 644.  Separate proof is necessary because

18 under no circumstances may a class be certified where certain members have suffered

19 no harm.  *See Rosentstein v. CPC Int'l, Inc.*, No. C90-1570, 1991 U.S. Dist. LEXIS

20 200, at *13-14 (E.D. Pa. Jan. 8, 1991).  As such, in cases where the existence of

21 damages may be questioned, separate evidence may be required, and predominance

22 found lacking.[14]

---

23 [13] ████████████████████████████████████████████████

24 ██████████████████████████████████████

25 [14] While not offering a single argument as to how the *existence* of damages may be
26 proven by common proof, Wiener offers nearly two pages about how damages may
be *calculated*.  Certif. Mot., at 18-19.  First, the method of calculation is irrelevant to
27 the *existence* of damages.  *See Caro*, 18 Cal. App. 4th at 665; *In re Live Concert*
*Antitrust Litig.*, 247 F.R.D. 98, 135-36 (C.D. Cal. 2007).  Second, there is reason to
28 doubt whether Plaintiff's methods are appropriate in this case.  *In re PPA Prods.*
*Liab. Litig.*, 214 F.R.D. 614, 619 (W.D. Wa. 2003) (rejecting proof of damages

(Footnote Cont'd on Following Page)

- 17 -

For instance, in *Clark v. Experian Info Solutions, Inc.*, 233 F.R.D. 508 (N.D. Ill. 2005), plaintiffs sued a credit agency alleging they were deceived into enrolling in a credit protection plan based on the defendant's uniform misrepresentations. *Id.* at 510.  Plaintiffs moved for class certification, but were denied. *Id.*  The court found there was evidence suggesting some members of the proposed class had not suffered damages because, among other things, they had already received a refund from the defendant. *Id.* at 512.  In light of this evidence, separate trials for each class member would be needed to determine the existence of damages. *Id.*

As in *Clark*, the evidence here is that many potential class members may have suffered no damages.  Consequently, individualized evidence is needed.

**a.  Some Purchasers Of Dannon's Products Received A Refund Of Their Purchase Price.**

Starting in 2006, Dannon launched the "Activia Challenge."  Jove Decl., ¶ 13. Consumers were asked to try Activia for two-weeks, and if they were not satisfied, Dannon would refund their money. *Id.*  Since the launch of the Challenge some Activia consumers have taken advantage of the program and have obtained a refund. *Id.*  Obviously, any of these consumers who would be part of Wiener's proposed class have suffered no damages.

**b.  Purchasers Were Also Able To Buy Dannon Products At Or Near The Price Of Other Yogurts.**

In addition to refunds, the record also indicates many purchasers were able to buy Activia and DanActive at prices equal to, or near the same price as other yogurts, a fact directly bearing on damages. *See* Certif. Mot., at 19; *Chavez*, 503 F. Supp. 2d at 1374 (holding plaintiff had no damages where he did not pay a premium for the drink he purchased).  The pricing of Activia and DanActive is controlled by retailers.

---

(Footnote Cont'd From Previous Page)

through a class member affidavit); *In re Congra Peanut Butter Prods. Liab. Litig.*, No 1:07-MD-1845, 2008 WL 2885951, *10 (N.D. Ga. July 22, 2008) (rejecting damages calculation based on aggregate profits made by defendant).

- 18 -

Jove Decl., ¶ 9.  These retailers are able to decide whether Activia and DanActive are sold at the manufacturer's suggested retail price or at a reduced price.  *Id*.  Many purchasers buying at a reduced price would not have suffered damages: they would have received a product, with clear value, without paying a premium.  At the same time, Dannon also issued product discount coupons.  *Id*., ¶ 10.  These coupons also allowed consumers to purchase the Products at a "sale" price.  *Id*.  For purchasers using these coupons, there also could well be no damage.  Accordingly, to determine whether a class member suffered damages, the Court would need to conduct separate inquires.  Thus, predominance cannot be achieved.

### B.   Wiener's Class Action Is Unmanageable And Therefore Not Superior.

A plaintiff seeking certification under Rule 23(b)(3) must also meet the superiority requirement.  A key consideration in evaluating superiority is whether the litigation is manageable.  Fed. R. Civ. P. 23(b)(3)(D).   Manageability requires the court to assess the "whole range of practical problems that" may affect adjudication of the case.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).  Where such practical problems exist, the class may be denied.  *Ludke v. Philip Morris, Inc.*, No. 00-1954, 2001 WL 1673791 (Minn. Dist. Ct. Nov. 21, 2001).

In *PPA*, 214 F.R.D. at 616, the court explained that where a number of individual issues must be resolved, management often becomes overwhelming.  Of particular importance to the court there was the individualized issue of class membership.  *Id*. at 617-20.  The court noted that determining class membership would be unmanageable because there was likely to be no reliable proof of purchase.  *Id*. at 617.  Thus, a class action was not superior.  *Id*.

Here, Wiener has also not proven a class action to be superior.  As discussed, a number of issues in this case will require individual resolution.  *See supra*.  Among them is the often unmanageable issue of class membership.  As in *PPA*, purchasers of DanActive and Activia do not keep records of their purchases.  Wiener, for example,

- 19 -

1  states she has no proof of purchase.  Wiener Depo., 83:14-16.  Moreover, because the

2  Products are sold through retailers, Dannon is generally not able to identify the vast

3  majority of purchasers.  *See* Jove Decl., ¶ 12.  The Court would then likely have to

4  make separate inquiries to determine *who* is in the class.  Given the potential size of

5  the class (over 4 million households) (Jove Decl., ¶ 11), this could result in a huge

6  investment of judicial resources.  As such, the proposed class action is unmanageable

7  and plainly not superior.

8  **VI.    CONCLUSION**

9          For all of the foregoing reasons, Dannon respectfully submits that Plaintiff's

10  motion for class certification should be denied.

11  DATED:  August 25, 2008              ARNOLD & PORTER LLP
                                         BINGHAM MCCUTCHEN LLP
12

13                                       By:/s/ Angel A. Garganta------

14
                                         Angel A. Garganta
15                                       Attorneys for Defendant
                                         THE DANNON COMPANY, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

- 20 -

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certified that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 25, 2008.

/s/  Angel A. Garganta
Arnold & Porter LLP
ANGEL A. GARGANTA (SBN 163957)
angel_garganta@aporter.com
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017
Telephone: (213) 243-4000
Facsimile:  (213) 243-4199

NO. CV08-00415 SJO (AGRX); RELATED WITH CV08-03943 SJO (AGRX)
CERTIFICATE OF SERVICE

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on August 25, 2008, I electronically filed the foregoing

3  with the Clerk of the Court using the CM/ECF system which will send notification

4  of such filing to the e-mail addresses denoted on the attached Electronic Mail

5  Notice List, and I hereby certified that I have mailed the foregoing document or

6  paper via the United States Postal Service to the non-CM/ECF participants

7  indicated on the attached Manual Notice List.

8      I certify under penalty of perjury under the laws of the United States of

9  America that the foregoing is true and correct.  Executed on August 25, 2008.

10

11         /s/  Angel A. Garganta
           Arnold & Porter LLP

12        ANGEL A. GARGANTA (SBN 163957)
           angel_garganta@aporter.com

13        777 South Figueroa Street, 44th Floor
           Los Angeles, CA 90017

14        Telephone: (213) 243-4000
           Facsimile:  (213) 243-4199

15

16

17

18

19

20

21

22

23

24

25

26

27

28