UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA WIENER, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE DANNON COMPANY, INC., ) <br> ) <br> Defendant. ) <br> ) | NO. CV 08-00415-SJO (AGRx) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION; DENYING DEFENDANT'S EX PARTE APPLICATION FOR CONTINUANCE OF TWO MONTHS OR PENDING CLASS CERTIFICATION AND JPML RULINGS; DENYING JOINT STIPULATION STAYING PROCEEDINGS** <br> [Docket No. 60, 262, 275] |

This matter is before the Court on Plaintiff Patricia Wiener ("Wiener")'s Motion for Class Certification, filed July 28, 2008. Defendant The Dannon Company, Inc. ("Dannon") filed an Opposition, to which Plaintiff replied. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for September 22, 2008. *See* Fed. R. Civ. P. 78(b). Because Wiener does not satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a)(3), Plaintiff's Motion is DENIED.

I.    BACKGROUND

In February 2006, Dannon began marketing Activia yogurt, which contains the probiotic bacteria,[1] *Bifidobacterium animalis*, a patented probiotic strain that Dannon refers to by the more

---

[1] Probiotics are live microorganisms, including bacteria, that confer a health benefit to the host when administered in adequate amounts. (Am. Class Action Compl. ¶ 17; Decl. Srinadh Komanduri, M.D., M.S. Supp. Pl.'s Mot. Class Certification ("Komanduri Decl.") ¶ 11.) The medical and scientific community continues to investigate the health benefits of probiotic bacteria and the

consumer-friendly trademarked name, *Bifidus Regularis*. (*See* Am. Class Action Compl. ¶¶ 6–7; Decl. Marc Jove Supp. Def. Dannon Company, Inc.'s Opp'n to Pl.'s Mot. Class Certification ("Jove Decl.") ¶ 2; Komanduri Decl. ¶ 10.) Throughout its marketing, which includes television commercials, print media, in-store displays, and product promotions, Dannon advertises that Activia is "scientifically proven" to naturally regulate digestion when eaten daily for two weeks. (*See* Am. Class Action Compl. ¶ 16; Jove Decl. ¶¶ 3, 14.) According to Dannon, this claim is supported by approximately twelve clinical studies. (Decl. Dr. Miguel Freitas Ph.D. Supp. Def. Dannon Company, Inc.'s Opp'n Pl.'s Mot. Class Certification ("Freitas Decl.") ¶¶ 3, 6, Ex. A.)

In January 2007, Dannon began producing DanActive, a drinkable dairy product containing the probiotic bacteria *Lactobacillus casei*, which Dannon refers to by the consumer-friendly trade name, *L. Casei Immunitas*. (*See* Am. Class Action Compl. ¶¶ 7; Jove Decl. ¶ 5; Komanduri Decl. ¶ 10.) In its marketing campaign, which again includes television commercials, print media, in-store displays, and product promotions, Dannon claims that DanActive is "clinically proven" to strengthen the immune system. (*See* Am. Class Action Compl. ¶ 16; Jove Decl. ¶¶ 6, 14.) According to Dannon, this claim is supported by approximately twenty-one clinical studies. (Freitas Decl. ¶¶ 4, 6, Ex. B.)

On January 23, 2008, Wiener filed a class action complaint against Dannon. (Class Action Compl.) On July 22, 2008, Wiener and another plaintiff, Steven R. Berube ("Berube"), filed an Amended Class Action Complaint against Dannon, alleging that Dannon violated both the Consumer Legal Remedies Act ("CLRA") and the Unfair Competition Law ("UCL"), and breached express warranties to its consumers. (*See* Am. Class Action Compl.) These causes of action are based on allegations that Dannon's claims regarding the health benefits of Activia, Activia Light,[2] and DanActive ("the Products") are unsubstantiated and deceptive. (Am. Class Action Compl. ¶¶

---

food industry has started to include probiotic bacteria in foods. (*See* Komanduri Decl. ¶¶ 10–16.)

[2] Wiener varies the spelling of "Activia Light" to "Activia Lite" in some of her filings. (*Compare* Pl.'s Notice of Mot. & Mot. for Class Certification ("Class Certification Mot.") 1, *with* Am. Class Action Compl. ¶ 19.) For consistency, the Court will refer to the product as "Activia Light," which appears to be the proper spelling.

3–5.) Wiener has purchased Activia but has never purchased Activia Light or DanActive. (*See* Am. Class Action Compl. ¶ 13; Decl. Mark P. Pifko Supp. Def.'s Mem. Opp'n Pl.'s Mot. Class Certification ("Pifko Decl."), Ex. 1, Videotaped Dep. of Patricia Wiener, 43:17–18, 44:14–16.) In contrast, Berube has purchased DanActive but has never purchased Activia or Activia Light. (*See* Am. Class Action Compl. ¶ 14.) On August 29, 2008, Berube was dismissed with prejudice as a plaintiff pursuant to the parties' joint stipulation. (Order Dismissing Pl. Steven R. Berube; *see* Stipulation of Parties to Dismiss Pl. Steven R. Berube.) Therefore, Wiener is the only remaining plaintiff in this action. (*See* Am. Class Action Compl. ¶¶ 13–14; Order Dismissing Pl. Steven R. Berube.)

Wiener now moves, pursuant to Federal Rule of Civil Procedure 23, for class certification and to be appointed class representative of the following class: "All persons who purchased in California at any time up to August 1, 2008, DanActive, Activia or Activia Li[ght]. Excluded from the Class are defendant's officers, directors and employees and those who purchased the products for the purpose of resale." (Class Certification Mot. 1.) Wiener also seeks to have the law firms of Coughlin, Stoia, Geller Rudman & Robbins LLP; Mager & Goldstein, LLP; and Gilman and Pastor appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g). (Class Certification Mot. 1.)

II.   DISCUSSION

Federal Rule of Civil Procedure 23 "provides district courts with broad discretion to determine whether a class should be certified . . . ." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (internal citation omitted). The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) are satisfied and at least one requirement of Rule 23(b) is satisfied. *Id.*

In determining whether to grant a motion for class certification pursuant to Rule 23, a court may consider evidence that goes to the requirements of Rule 23 even if such evidence relates to the underlying merits of the case. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (internal citations omitted). Because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising plaintiff's cause of action," *Gen. Tel.*

*Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982), "a court must often look to evidence beyond the pleadings," *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 574 (C.D. Cal. Apr. 25, 2007) (internal citations omitted).

  A. <u>The Requirements of Rule 23(a) Are Not Satisfied Because Weiner's Claims Are Not Typical of All Class Members</u>.

  In considering whether to grant class certification, a court's "threshold task is to ascertain whether the proposed . . . class satisfies the requirements of Rule 23(a) . . . ." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). A court should not grant class certification unless it "is satisfied, after a rigorous analysis, that all of the requirements of Rule 23(a)" are met. *Gen. Tel. Co. of the Sw.*, 457 U.S. at 161. The four requirements of Rule 23(a) include that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class." *Dukes*, 509 F.3d at 1176 (quoting Fed. R. Civ. P. 23(a)); *see* Fed. R. Civ. P. 23(a). These requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 156 (internal citation and quotations omitted).

  1. <u>Numerosity</u>

  Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, Dannon does not contest that numerosity is satisfied, (*see* Mem. in Opp'n to Pl.'s Mot. for Class Certification ("Def.'s Opp'n") 5–11; Decl. Timothy G. Blood Supp. Pl.'s Mot. Class Certification ("Blood Decl."), Ex. 22, The Dannon Company, Inc.'s Responses to Pl.'s First Set of Reqs. for Admiss. 3.), as it estimates the class may include several million plaintiffs, (*see* Jove Decl. ¶ 11.) Given the vast number of potential plaintiffs, the Court finds that the numerosity requirement of Rule 23(a)(1) is readily satisfied. *See Dukes*, 509 F.3d at 1177.

### 2. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class . . . ." Fed. R. Civ. P. 23(a)(2). This commonality requirement is "construed permissively"; "all questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Dukes*, 509 F.3d at 1177 (quoting *Hanlon*, 150 F.3d at 1019).

Here, Dannon does not contest that the commonality requirement of Rule 23(a)(2) is met. (*See* Def.'s Opp'n 5–11.) The proposed class members clearly share common legal issues regarding Dannon's alleged deception and misrepresentations in its advertising and promotion of the Products. Despite the existence of "divergent factual predicates" surrounding the individual class members' purchases, the overriding "shared legal issues" are sufficient to satisfy the Ninth Circuit's "permissive" view of Rule 23(a)(2). *See Hanlon*, 150 F.3d at 1019. Accordingly, the Court finds that the commonality requirement of Rule 23(a)(2) is satisfied.

### 3. Typicality

Unlike the numerosity and commonality requirements, Dannon does oppose Wiener's satisfaction of the typicality requirement of Rule 23(a)(3), arguing that she does not meet the requirement because she purchased only one of the products at issue in the litigation, Activia. (*See* Def.'s Opp'n 5–6.) Therefore, Dannon contends that her claims are not typical of the claims of DanActive purchasers, as the products, which were advertised separately, involve different health benefits that are supported by different studies. (*See* Def.'s Opp'n 6–7.) In response, Wiener claims that she satisfies the typicality requirement of Rule 23(a)(3), because her legal theories are identical to those advanced on behalf of all potential class members and Dannon's course of conduct, its advertising suggesting that the products have clinically proven benefits, is identical for both Activia and DanActive purchasers. (*See* Mem. in Support of Pl.'s Mot. for Class Certification ("Pl.'s Mot.") 15; Reply Mem. in Support of Pl.'s Mot. for Class Certification ("Pl.'s Reply") 1.)

1    Under Ninth Circuit precedent, to satisfy the typicality requirement of Rule 23(a)(3), that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," the plaintiff's claims must be "reasonably coextensive with those of absent class members; they need not be substantially identical." *Dukes*, 509 F.3d at 1184 (quoting *Hanlon*, 150 F.3d at 1020). The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508 (internal citations omitted).

The typicality requirement seeks to determine "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 158 n.13. Thus, "[t]he purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of class." *Hanon*, 976 F.2d at 508 (internal citations omitted). In other words, a "court must ensure that the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented" and that the absentees' claims will be adequately pursued. *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 489–90 (N.D. Cal. 2008) (internal citation and quotations omitted) (holding that Rule 23(a)(3) typicality requirement was not satisfied where "the representative plaintiffs simply do not have the appropriate incentive to establish . . . violations with respect to all of the absent class members," as evidence needed to prove that defendants conspired to fix prices of products that named plaintiffs had purchased would not prove that defendants conspired to fix prices of products that unnamed class members had purchased). As such, courts have found that the typicality requirement is not satisfied where evidence needed to prove the named plaintiff's claims is not probative of other class members' claims. *See id.*; *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group, L.P.*, 247 F.R.D. 156, 178 (C.D. Cal. 2007) (finding that, in antitrust case involving various sensors, seven named plaintiffs failed to meet the typicality requirement of Rule 23(a)(3) where there was "sufficient heterogeneity to indicate that proof that one Plaintiff was overcharged is not probative of whether other class members were

overcharged."); *see also In re Wireless Facilities, Inc.*, No. 07cv482 NLS, 2008 WL 4146126, at *4 (S.D. Cal. Sept. 3, 2008) (finding the Rule 23(a)(3) typicality requirement satisfied where "the proof Lead Plaintiff would need to establish its claims would also prove the claims of the proposed . . . Class.")

In cases involving a variety of products, courts, emphasizing that different products have different functions and different consumers, have held that a named plaintiff that purchased a different product than that purchased by unnamed plaintiffs fails to satisfy the typicality requirement of Rule 23(a)(3). *See Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 621–22 (S.D. Cal. 2007) (finding that named plaintiff did not satisfy the Rule 23(a)(3) typicality requirement where product plaintiff purchased was not one of the twenty-eight products subject to allegedly false hair strengthening claims); *Lewis Tree Serv., Inc. v. Lucent Techs. Inc.*, 211 F.R.D. 228, 232–34 (S.D.N.Y. 2002) (holding that the named plaintiff, who purchased only two of the more than sixty products at issue in the litigation, did not satisfy the Rule 23(a)(3) typicality requirement); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 313 (S.D.N.Y. 1999) (finding that named plaintiffs failed to satisfy the Rule 23(a)(3) typicality requirement where none of the plaintiffs had purchased one of the products at issue in the litigation). Nevertheless, courts have found such defects in typicality to be cured where the class sought to be certified has a named plaintiff for each product at issue in the litigation. *See Hanlon*, 150 F.3d at 1019–20. For example, the Ninth Circuit's decision in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), which reviewed a district court's certification of a nationwide class in a case involving a variety of products, noted that "the broad composition of the representative parties vitiates any challenge founded on atypicality," emphasizing that there was a class representative from every state for each model of the product at issue in the litigation. *Id.* at 1019–20; *see Arabian v. Sony Elecs., Inc.*, No. 05-CV-1741 WQH (NLS), 2007 WL 627977, at *6 (S.D. Cal. Fed. 22, 2007) (holding that plaintiffs failed to satisfy the Rule 23(a)(3) typicality requirement where "plaintiffs have not supplied a 'broad composition' of representative parties to vitiate the atypicality challenge, as was the case in *Hanlon*.")

1  Here, Wiener, the proposed class representative, has not met her burden of showing that
2  the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) is satisfied in regard to the
3  proposed class, California residents that purchased DanActive, Activia, or Activia Light.  *See*
4  *Dukes*, 509 F.3d at 1176; Class Certification Mot. 1.  Because Wiener has purchased only Activia
5  and has never purchased DanActive, the claims of the unnamed plaintiffs who purchased
6  DanActive are not "fairly encompassed by [Wiener's] claims."  *See Gen. Tel. Co. of the Sw.*, 457
7  U.S. at 156; Am. Class Action Compl. ¶ 13; Pifko Decl., Ex. 1, Videotaped Dep. of Patricia Wiener,
8  43:17–18, 44:14–16.)  Specifically, Dannon has made different health benefit claims regarding
9  Activia and DanActive, which feature different types of probiotic bacteria,  as Dannon's marketing
10 claims that the *Bifidus Regularis* in Activia aids digestion but that the *L. Casei Immunitas* in
11 DanActive strengthens the immune system.  (*See* Am. Class Compl. ¶¶ 6–7, 16; Jove Decl. ¶¶
12 2–3, 5–6, 14; Komanduri Decl. ¶ 10.)  Therefore, the products target consumers with different
13 health issues.  Moreover, different studies allegedly substantiate these health benefits.  (*See*
14 Freitas Decl. ¶¶ 4, 6, Ex. A, Ex. B.)  Furthermore, the advertising and marketing of the two
15 products is separate.  (*See* Jove Decl. ¶ 15; *see also* Am. Class Action Compl. ¶¶ 15–56.)  These
16 differences lead to a substantial divergence in the evidence required to prove the claims with
17 regard to Activia and DanActive.  In other words, the evidence needed to prove Wiener's claims
18 involving Activia, namely proof that Dannon's claim that *Bifidus Regularis* is clinically proven to
19 regulate digestion is false or misleading, is not probative of the claims of unnamed class members
20 who purchased DanActive, which require evidence that the claim that *L. Casei Immunitas* is
21 clinically proven to strengthen the immune system is false or misleading.  *See In re Graphics*
22 *Processing Units Antitrust Litig.*, 253 F.R.D. at 489–90; *Allied Orthopedic Appliances, Inc.*, 247
23 F.R.D. at 178; Am. Class Compl. ¶¶ 6–7, 16; Freitas Decl. ¶¶ 4–6, Ex. A, Ex. B; Jove Decl. ¶¶ 2–3,
24 5–6, 14; Komanduri Decl. ¶ 10.  As a result, "while [Wiener] has an incentive to prove [the alleged
25 deception surrounding Dannon's claims that Activia aids digestion, [s]he has no incentive to go
26 further" and prove the alleged deception surrounding Dannon's claims that DanActive strengthens
27 the immune system.  *See In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 483.
28 Unlike in *Hanlon v. Chrysler Corp.*, Wiener has not supplied a "broad composition" of proposed

class representatives to vitiate Dannon's atypicality challenge. *See Hanlon*, 150 F.3d at 1019–20; *Arabian*, 2007 WL 627977, at *6. As such, Wiener's claims and those of the unnamed class members that purchased DanActive are not "so interrelated" to relieve doubts that the interests of DanActive purchasers will be "fairly and adequately protected in their absence." *See Gen. Tel. Co. of the Sw.*, 457 U.S. at 158 n.13; *Hanon*, 976 F.2d at 508; *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. at 489–90.

Because the typicality requirement of Rule 23(a)(3) is not satisfied, the Court must DENY Wiener's Motion for Class Certification. *See Dukes*, 509 F.3d at 1176. Nevertheless, in order to focus the parties' arguments should Plaintiff seek leave to certify an alternative class, the Court will consider the rest of the requirements for class certification pursuant to Rule 23.

### 4. Adequacy of Representation

Dannon also argues that Wiener has failed to establish that she is an adequate class representative pursuant to Rule 23(a)(4) on the grounds that Wiener, who purchased only Activia, lacks standing to sue as to DanActive,[3] has little understanding of her counsel's retainer agreement, cannot recall reading the Complaint before it was filed, did not participate in discovery or mediation and that it is unclear whether Wiener understands the composition of the class and details surrounding the addition and subsequent dismissal of Berube as a plaintiff in the action. (*See* Def.'s Opp'n 7–9).

Rule 23(a)(4) permits class certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Dukes*, 509 F.3d at 1185. "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 509 F.3d at 1185 (citing *Hanlon*, 150 F.3d at 1020; *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003)).

---

[3] Because the Court has already found that Weiner is incapable of representing DanActive purchasers pursuant to the typicality requirement of Rule 23(a)(3), *see supra* Part II.A.iii, the Court need not address Dannon's arguments as to Wiener's failure to meet Rule 23(a)(4)'s adequacy of representation requirement for the same reason.

As to the first prong of the Ninth Circuit test for the Rule 23(a)(4) adequacy of representation requirement, the Court is not aware of any conflict of interest between Wiener and the proposed class members, as Wiener's interests in proving Dannon's alleged false advertising certainly align with those of other class members. Further, the Court finds that Dannon overstates the requirements for adequacy of representation. Wiener's deposition shows that she volunteered to represent the proposed class and to pursue a class action against Dannon, as well as that she understands that she is to act and make decisions in the best interests of the entire class, must keep fully abreast of all proceedings, and may have to testify if the case goes to trial. (*See* Supplemental Decl. Timothy G. Blood Supp. of Pl.'s Mot. Class Certification, Ex. B, Videotaped Dep. of Patricia Wiener, 44:17–45:5, 50:7–9, 98:14–99:3, 103:7–21.) As such, "[Wiener] understands [her] duties and is currently willing and able to perform them. [Rule 23(a)(4)] does not require more." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

As to the second prong of the adequacy of representation test, Wiener has retained counsel with significant experience litigating consumer fraud class actions in federal and state courts across the country. (*See* Blood Decl., Ex. 1, Coughlin Stoia Geller Rudman & Robbins LLP 1, 11–12; Ex. 2, Mager & Goldstein LLP Firm Biography 1, 4–5; Ex. 3, Gilman and Pastor, LLP Firm Resume 1–3.) As such, "Plaintiffs are represented by qualified and competent counsel," satisfying the second prong of the adequacy of representation requirement. *See Dukes*, 509 F.3d at 1185.

Accordingly, the adequacy of representation requirement of Rule 23(a)(4) is satisfied.

B.   The Requirements of Rule 23(b)(3) Are Satisfied.

In addition to satisfying the requirements of Rule 23(a)(3), the "part[y] seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor, et al.*, 521 U.S. 591, 614 (1997). To qualify for class certification under Rule 23(b)(3), a class must satisfy two conditions: (1) "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members" and (2) "a class action [must be] superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *see Dukes*, 509 F.3d at 1176; *Hanlon*,

150 F.3d at 1022. As such, Rule 23(b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's notes).

### 1. Predominance of Common Questions

The first requirement for class certification pursuant to Rule 23(b)(3) is that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *See* Fed. R. Civ. P. 23(b)(3). The Supreme Court has noted that "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud . . . ." *Amchem Prods., Inc.*, 521 U.S. at 625 (internal citations omitted).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* As such, "[w]hen one or more of the central issues in the action are common to the class and can be said to predominate, [a class action] will be considered proper . . . even though other matters will have to be tried separately." *Gartin v. S & M Nutec, LLC*, 245 F.R.D. 429, 435 (C.D. Cal. 2007) (internal citation omitted).

In opposing Plaintiff's satisfaction of the predominance requirement of Rule 23(b)(3), Dannon points to two issues that it argues will require individualized proof, namely reliance and damages. (*See* Def.'s Opp'n 11–19.) With regard to reliance, Dannon contends that a class-wide inference of proof is not appropriate in this case, because purchasers were not uniformly exposed to Dannon's advertising claims and the materiality of the misrepresentation is an issue unique to each purchaser, as Dannon's consumer surveys show that purchasers bought the Products for different reasons. (*See* Def.'s Opp'n 11–17.)

1  It is undisputed that reliance is an element of Plaintiff's causes of action based on breach
2 of warranty, *see Williams v. Beechnut Nutrition Corp.*, 229 Cal. Rptr. 605, 608 (Cal. Ct. App.
3 1986), and the CLRA, *see True v. Am. Honda Motor Co., Inc.*, 520 F. Supp. 2d 1175, 1182 (C.D.
4 Cal. 2007).  As both parties recognize, the issue of whether reliance is an element of Plaintiff's
5 cause of action under the UCL, however, is currently pending before the California Supreme
6 Court, as there is a split of authority on the issue.  *See Cattie v. Wal-Mart Stores, Inc.*, 504 F.
7 Supp. 2d 939, 947 (S.D. Cal. 2007) (noting split of authority but finding that, with recent
8 Proposition 64 reforms, the UCL now requires reliance); *Anunziato v. eMachines, Inc.*, 402 F.
9 Supp. 2d 1133, 1137–39 (C.D. Cal. 2005) (declining to read a reliance requirement into the UCL);
10 *In re Tobacco II Cases*, 146 P.3d 1250 (2006) (granting petition for review on issue of whether
11 UCL requires reliance); Def.'s Opp'n n.5; Pl.'s Reply n.7.  "Nevertheless, most courts that have
12 confronted this issue since the passage of Proposition 64," a recent amendment to the UCL, have
13 concluded that the UCL now requires reliance.  *True*, 520 F. Supp. 2d at 1182 (internal citations
14 omitted).  Although the Court finds the majority view, which requires reliance, more persuasive,
15 *see id.* at 1182; *Cattie*, 504 F. Supp. 2d at 947–49, the Court need not determine the issue
16 because even if reliance is required under the UCL, an inference of reliance for all class members
17 applies to this case, making class treatment appropriate.

18  Courts have found that an inference of reliance may be appropriate for claims for violations
19 of the UCL and the CLRA, *see True*, 520 F. Supp. 2d at 1182, as well as for breach of express
20 warranty, *see Osborne, et al.*, 243 Cal. Rptr. at 823.  An inference of reliance arises if material
21 misrepresentations were "made to persons whose acts thereafter were consistent with reliance
22 upon the representation."  *Occidental Land, Inc. v. Superior Court*, 556 P.2d 750, 754 (1976);
23 *Osborne, et al. v. Subaru of America, et al.*, 243 Cal. Rptr. 815, 823 (Cal. Ct. App. 1988) (internal
24 citations omitted).  For a class action, an inference of reliance arises as to the entire class only if
25 the material misrepresentations were made to all class members.  *See Vasquez v. Superior Court*,
26 484 P.2d 964, 973 (1971) ("It is sufficient for our present purposes to hold that if the trial court
27 finds material misrepresentations were made to the class members, at least an inference of
28 reliance would arise as to the entire class."); *Osborne, et al.*, 243 Cal. Rptr. at 823 (internal

1  citations omitted). In order for a misrepresentation of fact to be material, the misrepresentation
2  must have "induced the plaintiff to alter his position to his detriment. Stated in terms of reliance,
3  materiality means that without the misrepresentation, the plaintiff would not have acted as he did."
4  *True*, 520 F. Supp. 2d at 1182 (quoting *Caro v. Procter & Gamble Co.*, 22 Cal. Rptr.2d 419, 433
5  (1993)). The defendants may introduce evidence to rebut the inference of reliance. *Vasquez*, 484
6  P.2d at 973.

7  In this case, Plaintiff's CLRA, UCL, and breach of express warranty claims satisfy the
8  requirements for an inference of reliance: material representations were made to all potential class
9  members who then, with their purchase of one of the Products, acted in a manner "consistent with
10 reliance upon the representation." *See Occidental Land, Inc.*, 556 P.2d at 754; *Osborne, et al.*,
11 243 Cal. Rptr. at 823. Regardless of whether every class member was exposed to Dannon's
12 television, print, and internet advertisements, the record clearly establishes that Dannon's alleged
13 misrepresentations regarding the clinically proven health benefits of the Products are prominently
14 displayed on all of the Products' packaging, a fact that Dannon has never contested. (*See, e.g.,*
15 First Am. Compl. ¶¶ 23–25, 38–39; Def. Dannon Company, Inc.'s Answer Patricia Wiener &
16 Steven R. Berube's First Am. Putative Class Action Compl. ¶¶ 23–25, 38–39; Blood Decl., Ex. 6.)
17 Because, by definition, every member of the class must have bought one of the Products and,
18 thus, seen the packaging, Plaintiffs have succeeded in showing that the alleged
19 misrepresentations were made to all class members. *See Vasquez*, 484 P.2d at 973; *Osborne,*
20 *et al.*, 243 Cal. Rptr. at 823. Furthermore, the Court finds that the misrepresentations at issue
21 were material. The record clearly establishes that the characteristic that distinguishes the
22 Products from others on the market is their respective alleged health benefit. (*See, e.g.*, Pl's Mot.
23 2–11; Def.'s Opp'n 2–3; First Am. Compl. ¶¶ 23–45, 38–39; Blood Decl., Exs. 5–7; Freitas Decl.
24 ¶¶ 3–4; Jove Decl. ¶¶ 2–6.) Dannon has not pointed to any meaningful difference in flavor,
25 serving size, or the like that might influence consumers' purchases. Rather, Dannon's
26 advertisements, promotions, and labels for the Products explicitly and continually emphasize only
27 the health benefits of *Bifidus Regularis* in Activia and *L. Casei Immunitas* in DanActive. (*See, e.g.*,
28 Pl's Mot. 2–11; Def.'s Opp'n 2–3; First Am. Compl. ¶¶ 23–45, 38–39; Blood Decl., Exs. 5–7;

Freitas Decl. ¶¶ 3–4; Jove Decl. ¶¶ 2–6.) The Court is aware that many factors influence all consumers' purchasing decisions, a point which Dannon emphasizes, yet given that the alleged misrepresentations are the distinguishing characteristic of the Products, the Court finds that these representations induced consumer purchases because without the alleged misrepresentations, there is no reason, even with sales, coupons, or other promotions, to suggest that purchasers would have selected the Products over other Dannon products or similar, generally less expensive, products by other brands. *See True*, 520 F. Supp. 2d at 1182 (quoting *Caro*, 22 Cal. Rptr. 2d at 433). Finally, "the purchases made by plaintiffs were acts consistent with their reliance on" Dannon's alleged misrepresentations regarding the health benefits of the Products. *See Occidental Land, Inc.*, 556 P.2d at 754. Thus, the Court finds that the evidence presently before the Court allows for an inference of reliance in this case. Accordingly, reliance may be established on a common basis.

In addition to arguing that reliance is an individual rather than a common issue, Dannon argues that damages must be determined separately for each individual class member, as some purchasers of the Products received a refund pursuant to Dannon's occasional money-back guarantee, the "Activia Challenge," and other purchasers, who bought the Products on sale, paid prices comparable to competitive products. (Def.'s Opp'n 17–19.) Despite Dannon's emphasis on participation in the Activia Challenge as an individual issue for each potential class member, the Court is unconvinced that this is an issue significant enough to outweigh the numerous issues common to the class. Dannon admits that it has records of consumers who participated in the Activia Challenge, making the determination of whether a potential class member is precluded from obtaining damages for this reason a mere mechanical task that would by no means require separate trials as Dannon contends. (*See* Jove Decl. ¶ 12; Def.'s Opp'n 17–18.)

Moreover, with regard to Dannon's arguments that consumers purchased the Products at different prices, which would affect the amount of their damages, the Ninth Circuit has explicitly held that "[t]he amount of damages is invariably an individual question and does not defeat class action treatment." *Blackie, et al. v. Barrack, et al.*, 524 F.2d 891, 905 (9th Cir. 1975) (internal citation omitted). Further, although the Court recognizes the problems inherent in calculating

damages for a class action based on consumer products sold at varying prices, Dannon overstates these difficulties for the proposed class. Actual damages are not available under the UCL but are available for the CLRA and breach of express warranty claims. *See Kirkton v. Daimlerchrysler Corp.*, No. B199285, 2008 WL 1947916, at *4 (Cal. Ct. App. 2008); *Colgan v. Leatherman Tool Group, Inc.*, 38 Cal. Rptr. 3d 36, 59 (Cal. Ct. App. 2006). Yet if the class succeeds on the CLRA and breach of express warranty claims, then actual damages for these claims can be calculated by subtracting the value of the Products without the claimed health benefits, a uniform value to be determined based on the evidence presented at trial, from the price that the particular class member is able to prove he or she paid. *See, e.g.*, *Kirkton*, 2008 WL 1947916, at *4 (breach of express warranty) ("The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . . .'"); *Colgan*, 38 Cal. Rptr. 3d at 42–43 (CLRA) (noting that trial court applied market approach to actual damages calculation for CLRA claim, which provides for an award of the "difference between the actual value of that with which the defrauded person parted and the actual value of that which he received . . . ."). Thus, these calculations are not as individualized and unique to each class member as Dannon implies. Furthermore, with respect to the restitution permitted under the CLRA and UCL, the Court has "very broad" discretion to determine an appropriate remedy award as long as it is supported by the evidence and is consistent with the purpose of restoring to the plaintiff the amount that the defendant wrongfully acquired. *See Colgan*, 38 Cal. Rtpr. 3d at 58–63. Accordingly, the Court is confident that a workable method of calculating damages for the proposed class could be achieved.

Given that the calculation of damages, which the Ninth Circuit has recognized is necessarily an individual issue that should not defeat class certification, is the only individual issue, the Court finds that the common issues outweigh the individual issues. *See Hanlon*, 150 F.3d at 1022; *Blackie, et al.*, 524 F.2d at 905. Thus, with the record presently before the Court, Wiener has met her burden of showing that the predominance inquiry of Rule 23(b)(3) is satisfied. As the Ninth Circuit has explained, "[i]If later evidence disproves Plaintiffs' contentions that common issues

predominate, the district court can at that stage modify or decertify the class or use a variety of management devices to address the individualized issues that have arisen." *See Dukes*, 509 F.3d at 1176 (internal citations omitted).

### 2. Superior Method

The second requirement for class certification pursuant to Rule 23(b)(3) is that the class action is superior to other methods of adjudication. *See* Fed. R. Civ. P. 23(b)(3). In determining whether a class action is the superior method, courts must consider the four non-exclusive factors enumerated in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b); *see Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

"A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Cater-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The Supreme Court has explained that the main purpose of the Rule 23(b)(3) class action is to vindicate "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all," such as those whose individual recoveries would be too small to warrant an individual suit. *Amchem Prods., Inc.*, 521 U.S. at 617.

In this case, an assessment of the factors listed in Rule 23(b)(3) shows that a class action is the preferred procedure in this case. *See Hanlon*, 150 F.3d at 1023. As to the first factor, "the class members' interests in individually controlling the prosecution or defense of separate actions," where, as here, "damages suffered by each putative class member are not large, th[e first] factor weighs in favor of certifying a class action." *See* Fed. R. Civ. P. 23(b)(3); *Zinser*, 253 F.3d at 1190 (internal citation omitted). If potential class members were forced to pursue their claims individually, a number of disadvantages would arise, including "less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See Hanlon*, 150 F.3d at 1023. Further, given that the Court is not aware of any past or pending litigation involving

California purchasers of the Products, the second factor, "the extent and nature of any litigation concerning the controversy already begun by or against class members," also favors class certification. *See* Fed. R. Civ. P. 23(b)(3). With regard to the third factor, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," because the proposed class involves only California purchasers of the Products, it is preferable that the litigation occur in a California court. *See* Fed. R. Civ. P. 23(b)(3). Finally, as to the fourth factor, "the likely difficulties in managing a class action," the Ninth Circuit has explained that if "the complexities of class action treatment outweigh the benefits of considering common issues in one trial," then class action treatment is not the "superior" method of adjudication. *Zinser*, 253 F.3d at 1192 (internal citations omitted). Dannon correctly points out a number of challenges to managing the proposed class, including the calculation of damages and identifying class members, but these complexities do not outweigh the benefits of proceeding in a class action format. The damages calculation is a single individual issue among numerous common issues. Moreover, although there may be difficulties in locating class members because Dannon does not have records of purchasers other than those who participated in the Activia Challenge or otherwise contacted Dannon, the Ninth Circuit has minimized the weight to be placed on the existence of unknown class members, noting that the majority of class actions have "at least some . . . unlocated class members . . . ." *See Six (6) Mexican Workers, et al. v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990); Jove Decl. ¶ 12. Thus, the Rule 23(b)(3) factors favor class certification.

Moreover, "[a] comparative examination of alternatives underscores the wisdom of a class action in this instance." *See Hanlon*, 150 F.3d at 1023. "[T]he alternative methods of resolution are individual claims for a small amount of . . . damages . . . ." *See id.* Thus, "[i]f plaintiffs cannot proceed as a class, . . . most will be unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover." *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (internal citations omitted). Thus, there is no realistic alternative to a class action in this case, making a class action undoubtedly the superior method of adjudication. *See Valentino*, 97 F.3d at 1234. Further, permitting the potential class

members, who individually would be unable to vindicate their rights, to collectively assert their causes of action is consistent with the primary purpose of a Rule 23(b)(3) class action. *See Amchem Prods., Inc.*, 521 U.S. at 617.

Because the Court finds that a class action is the superior method of adjudication in this case, both requirements of Rule 23(b)(3) are satisfied.

C. <u>Plaintiff's Proposed Counsel Satisfy the Requirements of Rule 23(g).</u>

Wiener also seeks to have the law firms of Coughlin, Stoia, Geller Rudman & Robbins LLP; Mager & Goldstein, LLP; and Gilman and Pastor appointed as class counsel pursuant to Federal Rule of Civil Procedure 23(g). (Class Certification Mot. 1.) Rule 23(g) requires the Court to appoint class counsel that will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B), (4). In making its decision, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Here, Dannon does not contest the proposed class counsel's adequacy under Rule 23(g) and the Court finds that Plaintiff's proposed class counsel, Coughlin Stoia Geller Rudman & Robbins LLP, Mager & Goldstein LLP, and Gilman and Pastor, LLP, would "fairly and adequately represent the class" as the Rule requires. *See* Fed. R. Civ. P. 23(g)(1)(B), (4); *see generally* Def.'s Opp'n. The firms have extensive experience in handling class actions, particularly consumer fraud class actions. (*See* Blood Decl., ¶¶ 2–5; Ex. 1, Coughlin Stoia Geller Rudman & Robbins LLP 1, 11–12; Ex. 2, Mager & Goldstein LLP Firm Biography 1, 4–5; Ex. 3, Gilman and Pastor, LLP Firm Resume 1–3.) Moreover, based on the present record and counsel's representations, the Court is satisfied with the work the firms have done to investigate the potential claims against Dannon and the amount of resources they are able to commit to the litigation. (*See* Blood Decl. ¶¶ 2, 6.) Given the firms' experience litigating consumer class actions in both California state and federal court and the arguments made to the Court thus far, the Court has no concern with the adequacy of proposed counsels' knowledge of the California consumer fraud

1  laws applicable in this case.  (*See* Blood Decl., Ex. 1, Coughlin Stoia Geller Rudman & Robbins

2  LLP 1, 11–12; Ex. 2, Mager & Goldstein LLP Firm Biography 1, 4–5; Ex. 3, Gilman and Pastor,

3  LLP Firm Resume 1–3.)

4      Thus, Rule 23(g)'s requirements are met and Plaintiff's proposed class counsel would be

5  entitled to appointment if class certification were appropriate in this case.

6  III.  RULING

7      Because Weiner fails to satisfy the typicality requirement of Rule 23(a)(3), Plaintiff's Motion

8  for Class Certification is DENIED.  Plaintiff has leave to substitute in an appropriate class

9  representative until **February 12, 2009**.

10      Furthermore, all documents requested to be filed under seal in connection with the Motion

11  for Class Certification will be filed publicly unless counsel clearly and succinctly articulate reasons

12  why a particular document should be filed under seal on or before **February 12, 2009**.

13      Finally, Defendant's Ex Parte Application for Continuance of Two Months or Pending Class

14  Certification and JPML Rulings, filed January 13, 2009, and the Joint Stipulation Staying

15  Proceedings, filed January 26, 2009, are DENIED without prejudice to renew.

16  IT IS SO ORDERED.

17  Dated this 30th day of January, 2009.

*S. James Otero*

S. JAMES OTERO
UNITED STATES DISTRICT JUDGE